IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS 815 Black Lives Matter Plaza NW, Washington, DC 20006,<br><br>INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, AFL-CIO 513 C Street N.E. Washington, DC 20002,<br><br>AMERICAN FEDERATION OF TEACHERS, AFL-CIO 555 New Jersey Avenue N.W. Washington, DC 20001,<br><br>METAL TRADES DEPARTMENT, AFL-CIO 815 Black Lives Matter Plaza, N.W. Washington, DC 20006,<br><br>INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS, AFL-CIO 700 Maritime Boulevard, Suite B Linthicum Heights, Maryland 21090,<br><br>DISTRICT NO. 1, PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL-CIO 444 North Capitol Street N.W., Suite 800 Washington, DC 20001,<br><br>UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY, LOCAL 100, AFL-CIO 3010 Interstate 30 Mesquite, TX 75150,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP President of the United States | Case No. 1:25-cv-02445<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1600 Pennsylvania Avenue N.W.
Washington, D.C. 20500,

SCOTT KUPOR
Director
Office of Personnel Management
1900 E Street N.W.
Washington, D.C. 20415,

LEE M. ZELDIN
Administrator
Environmental Protection Agency
1200 Pennsylvania Avenue N.W.
Washington, D.C. 20460,

PETER HEGSETH
Secretary of Defense
U.S. Department of Defense
1000 Defense Pentagon
Washington, DC 20301,

KRISTI NOEM
Secretary of Homeland Security
U.S. Department of Homeland Security
2707 Martin Luther King Jr Ave SE
Washington, DC 20528,

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Federal civilian workers have had the legal right to collectively bargain with their government agency employers since the early 1960s. When Congress adopted the Civil Service Reform Act of 1978, Congress found that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). Congress codified an extensive labor-management relations framework for federal civil servants in Chapter 71 of Title 5 of the U.S. Code ("Chapter 71").

2.      Plaintiffs are labor organizations whose members include tens of thousands of federal workers. Many of these workers are employed in bargaining units that have had continuous union representation for purposes of collective bargaining for more than 50 years—across multiple presidential administrations and during wartime and peacetime.

3.      This lawsuit challenges President Trump's Executive Order No. 14251, Exclusions from Federal Labor-Management Programs, 90 Fed. Reg. 14,553 (March 27, 2025) ("Executive Order"), which strips the vast majority of federal workers of their collective bargaining rights, while preserving collective bargaining for police officers, firefighters, and security guards. The Executive Order relies on the pretext that collective bargaining for all the excluded units is incompatible with "national security," even though these workers have had collective bargaining rights for decades.

4.      The Executive Order and Defendants' implementation of the Executive Order are unconstitutional and a violation of the Administrative Procedure Act. As such, this Court should invalidate the Executive Order and enjoin Defendants from implementing it. Three other lawsuits challenging the Executive Order are already pending in this Court: *National Treasury Employees*

*Union v. Trump*, No. 25-cv-00935-PLF; *American Foreign Service Association v. Trump*, No. 25-cv-1030-PLF; and *Federal Education Association v. Trump*, No. 25-cv-01362-PLF.

## JURISDICTION

5.    This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege claims arising under the U.S. Constitution and the Administrative Procedure Act.

## VENUE

6.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) because some Plaintiffs are headquartered in this District, because Defendants reside in this District, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

7.    Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 63 national and international labor unions that represent nearly 15 million working people. The other Plaintiffs are labor organizations affiliated with the AFL-CIO whose members include tens of thousands of federal employees adversely affected by the Executive Order and the Defendants' implementation of the Executive Order. Plaintiffs bring this action on their own behalf, on behalf of their affiliates, and on behalf of their members.

8.    Plaintiff  International Federation of Professional & Technical Engineers, AFL-CIO ("IFPTE") is a labor organization whose local unions serve as the bargaining representatives for federal employees at multiple agencies. IFPTE Local 20 is the bargaining representative of professional employees of the Environmental Protection Agency's Region 9, which covers Nevada, California, Arizona, Hawaii, the Pacific Islands, and 148 tribal nations. IFPTE Locals 8A, 86, 96, 97, 98, 131, 259, 561, 777, and 852 are the bargaining representatives of units of

civilian employees of United States Army Corps of Engineers. IFPTE Locals 1, 3, 4, 12, 16, 22, 32, and 121 are the bargaining representatives of units of civilian employees of the Naval Sea Systems Command. IFPTE Local 1437 represents a unit of professionals who work at an Army facility in New Jersey. IFPTE Locals have represented federal employee bargaining units for more than 45 years.

9.    Plaintiff American Federation of Teachers, AFL-CIO ("AFT"), through its affiliate the Overseas Federation of Teachers, represents a bargaining unit of schoolteachers who are employed by the Department of Defense Education Activity ("DoDEA"), a subdivision of the Department of Defense. DoDEA operates public schools serving prekindergarten through 12th grade dependents of military and civilian families stationed overseas. AFT's representation of this schoolteacher bargaining unit predates the adoption of Chapter 71 in 1978.

10.    Plaintiff Metal Trades Department, AFL-CIO is a labor organization that, through its affiliated metal trades councils, serves as the bargaining representative for more than 20,000 blue-collar trades workers employed by various subdivisions of the Department of Defense. These bargaining units include trades workers employed at facilities in California, Connecticut, District of Columbia, Georgia, Hawaii,  Indiana, New Hampshire, New Jersey, Nevada, Pennsylvania, Rhode Island, Virginia, and Washington State. Metal trades councils also serve as the bargaining representatives of trades workers employed by the U.S. Coast Guard (part of the Department of Homeland Security) in Maryland and Virginia. Some of these bargaining units of trades workers have had union representation since the 1960s.

11.    Plaintiff International Organization of Masters, Mates & Pilots, AFL-CIO ("MM&P") is a labor organization that serves as the bargaining representative for about 600 civilian mariners employed to provide transportation and supply services to various subdivisions

of the Navy and the U.S. Army Corps of Engineers. MM&P has represented its largest naval unit, composed of licensed deck officers sailing supply ships, since the early 1970s.

12.    Plaintiff District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO ("MEBA") is a labor organization that serves as the bargaining representative for approximately 450 civilian mariners on vessels that provide ocean transportation of supplies for the Navy. MEBA also serves as the bargaining representative for approximately 50 civilian mariners on vessels operated by the U.S. Army Corps of Engineers that maintain and improve navigation channels and waterways. MEBA has represented its Navy unit since at least 1973 and its U.S. Army Corps of Engineers unit since at least 1977.

13.    Plaintiff United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 100, AFL-CIO ("UA Local 100") is a labor organization that serves as the bargaining representative of approximately 60 blue-collar trades workers at an Army depot in New Boston, Texas. The unit has been represented by a local union of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry for more than 20 years. UA Local 100 replaced a different UA local union that previously represented the unit.

14.    Defendant Donald J. Trump is the President of the United States of America. He is sued in his official capacity.

15.    Defendant Scott Kupor is the Director of the U.S. Office of Personnel Management. He is sued in his official capacity.

16.    Defendant Lee M. Zeldin is the Administrator of the Environmental Protection Agency. He is sued in his official capacity.

17.    Defendant Peter Hegseth is the United States Secretary of Defense. He is sued in his official capacity.

18.     Defendant Kristi Noem is the United States Secretary of Homeland Security. She is sued in her official capacity.

## BACKGROUND

**A.    Congress determined that federal employees should have collective bargaining rights by adopting Chapter 71.**

19.     An "outdated patchwork of statutes and rules built up over almost a century" governed federal employment before 1978. *United States v. Fausto*, 484 U.S. 439, 444 (1988). Congress reacted to this state of disarray through its enactment of the Civil Service Reform Act of 1978, which "overhauled the civil service system." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773 (1985).

20.     Before Congress passed the Civil Service Reform Act, collective bargaining in the federal civil service already had been authorized and governed by two executive orders. The first was issued in 1962 by President Kennedy. *See* Executive Order 10,988, Employee-Management Cooperation in the Federal Service, 27 Fed. Reg. 551 (Jan.17, 1962). The second was issued in 1969 by President Nixon. *See* Exec. Order 11,491, Labor-Management Relations in the Federal Service, 34 Fed. Reg. 17,605 (Oct. 31, 1969). By the mid-1970s, about 60 percent of federal civilian employees were represented by unions. Thus, Congress was able to rely on a pre-existing history of productive collective bargaining for federal employees when Congress adopted the Civil Service Reform Act.

21.     "In passing the Civil Service Reform Act, Congress unquestionably intended to strengthen the position of federal unions and to make the collective-bargaining process a more effective instrument of the public interest than it had been under the [previous] regime." *Bureau of Alcohol, Tobacco, & Firearms v. Fed. Labor Rel. Auth.*, 464 U.S. 89, 107 (1983). Accordingly, the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, enacted as

Title VII of the Act and codified as Chapter 71 of Title 5 of the United States Code ("Chapter 71"), was a central aspect of Congress's federal civil service reform.

22.    Chapter 71 sets forth a comprehensive framework governing collective bargaining in the federal civil service "designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b). It rests on Congress's explicit finding that "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them … safeguards the public interest." 5 U.S.C. § 7101(a)(1).

23.    Through Chapter 71, Congress assigned federal sector labor organizations the job of "act[ing] for" and "negotiat[ing] collective bargaining agreements covering" all employees in the bargaining units that they are elected to represent. 5 U.S.C. § 7114(a).

24.    Congress granted federal sector labor unions this responsibility based on its conclusion that the work of labor organizations "contributes to the effective conduct of public business" and "facilitates and encourages the amicable settlement of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a)(1).

25.    Chapter 71 generally requires bargaining over matters affecting conditions of employment, *see* 5 U.S.C. § 7103(a)(14), though this does not extend to matters established by federal statute or by government-wide regulations. *Id.* §§ 7103(a)(14)(c) & 7117(a)(2). Federal employees also have no right to engage in strikes or work stoppages. *Id.* § 7311.

26.    Congress excluded some agencies or offices within agencies from Chapter 71's coverage. These include the Federal Bureau of Investigation, the Central Intelligence Agency, the National Security Agency, and the United States Secret Service. 5 U.S.C. § 7103(a)(3).

27.     Chapter 71 also gives the President narrow authority to exclude additional agencies from the Chapter 71's coverage. He may only do so if he determines that (1) the "agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work" and (2) Chapter 71 "cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1).

**B.      Prior Presidential administrations have already excluded sensitive security and intelligence subdivisions from Chapter 71.**

28.     Shortly after the adoption of Chapter 71, President Carter issued an order excluding certain intelligence and security agencies from Chapter 71. Exec. Order No. 12171, 44 Fed. Reg. 66565 (Nov. 19, 1979). Over time, other Presidents issued narrowly targeted orders excluding additional agency subdivisions that were clearly engaged in sensitive intelligence and/or national security work from Chapter 71, including when the government was reorganized to create the Department of Homeland Security.[1] Those narrowly targeted national security exclusions covered a tiny fraction of the federal workforce and most involved subdivisions with no prior history of collective bargaining.

29.     During the 47 years since the adoption of Chapter 71, no President excluded or sought to exclude any of the Plaintiffs' bargaining units at issue in this case from the protections of Chapter 71. Nor did any serious commentator even suggest that the application of Chapter 71 to these bargaining units is inconsistent with national security.

---

[1] Exec. Order No. 12,338, 47 Fed. Reg. 1,369 (Jan. 11, 1982); Exec. Order No. 12,410, 48 Fed. Reg. 13,143 (March 28, 1983); Exec. Order No. 12,559, 51 Fed. Reg. 18,761 (May 20, 1986); Exec. Order No. 12,666, 4 Fed. Reg. 1,921 (Jan. 12, 1989); Exec. Order No. 12,671, 4 Fed. Reg. 11,157 (March 14, 1989); Exec. Order No. 12681, 54 Fed. Reg. 28,997 (July 6, 1989); Exec. Order No. 12,693, 54 Fed. Reg. 40,629 (Sept. 29, 1989); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (March 11, 1997); Exec. Order No. 13,252, 67 Fed. Reg 1,601 (Jan. 7, 2002); Exec. Order No. 13,381, 70 Fed. Reg. 37,953 (June 27, 2005); Exec. Order 13,480, 67 Fed. Reg. 1,601 (Nov. 26, 2008); Exec. Order No. 13,760, 82 Fed. Reg. 5,325 (Jan. 12, 2017); Exec. Order No. 13,869, 84 Fed. Reg. 18,125, (April 24, 2019).

30.    At the outset of his first term in office, in January 2020, President Trump attempted to delegate his authority under 5 U.S.C. § 7103(b)(1) to "issue orders excluding Department of Defense agencies or subdivisions thereof" from coverage under Chapter 71 to the Secretary of Defense. 85 Fed. Reg. 10033 (Jan. 29, 2020). However, then Secretary of Defense Mark Esper testified before Congress that he did not request the authority from the President and could not recall a time in the past that would have warranted this use of authority. Mark Esper Testimony, House Armed Services Committee (Feb. 27, 2020).

31.    A bipartisan group of U.S. senators strongly objected to President Trump's attempt to strip bargaining rights from Department of Defense civilian employees, explaining that "collective bargaining is not only compatible with this needed flexibility, but also is a key component in preserving flexibility by giving employees a voice in the system and providing avenues for management to receive feedback." Erich Wagner, "Senators from Both Political Parties Urge Trump to 'Reconsider' Defense Union Memo," *Government Executive* (Feb. 28, 2020). They further noted that "exemptions permitted by the process are not meant to be given widely to an entire department as a sweeping declaration, but to be carefully considered." *Id.*

32.    Defense Secretary Esper never attempted to exercise the authority delegated to him by President Trump to exclude any Department subdivisions from Chapter 71.

33.    On February 24, 2021, President Biden rescinded the delegation to the Secretary of Defense that purported to allow the secretary to exercise the president's authority under 5 U.S.C. § 7103(b)(1). Exec. Order 14018 § 1, 86 Fed. Reg. 11855 (Feb. 24, 2021).

**C.** **Plaintiffs have had stable and mutually beneficial collective bargaining relationships with federal agencies for decades without any interference with national security.**

34.    As stated above, many of Plaintiffs' federal employee bargaining units have had

union representation for decades, with many union-represented bargaining units pre-dating the

adoption of Chapter 71 in 1978. For example, one of the Metal Trades Department's bargaining

units has represented blue-collar trades workers at a Coast Guard yard in Maryland since 1964.

35.    Federal agencies have engaged in collective bargaining with these bargaining

units during the Viet Nam War, the Cold War and the fall of the Soviet Union, 9/11 and the War

on Terror, as well as during the war in Afghanistan, the longest war the United States has ever

fought.  At no time has the application of Chapter 71 to these bargaining units ever been

inconsistent with national security—nor was there ever any serious suggestion to the contrary.

**D.** **President Trump's Executive Order uses the pretext of national security to strip most federal employees of their collective bargaining rights while preserving collective bargaining for police and firefighters.**

36.    On March 27, 2025, President Trump issued Executive Order No. 14251,

Exclusions from Federal Labor-Management Programs, 90 Fed. Reg. 14,553 (March 27, 2025)

("Executive Order"), thereby depriving most federal civil service workers of their rights under

Chapter 71.

37.    The Executive Order is staggering and unprecedented in its breadth. It sweeps up

four Cabinet departments in their entirety, including the Department of Defense; two Cabinet

departments, each with a single limited exception; dozens of agencies and subdivisions within

five other Cabinet departments, including the Department of Homeland Security; and seven

independent agencies in their entirety, including the Environmental Protection Agency. The

Executive Order eliminates collective bargaining for about 75 percent of all federal employees

represented by unions. Erich Wagner, "Trump order aims to outlaw most government unions on 'national security' grounds," *Government Executive* (March 27, 2025), https://perma.cc/6KF7-7SJY.

38.     On the same day the Executive Order was publicly released, Acting Director of Office of Personal Management ("OPM"), Charles Ezell, issued a memorandum providing guidance to agency leadership regarding implementation of the Executive Order. *See* Memorandum of Charles Ezell, "Guidance on Executive Order Exclusions from Federal Labor-Management Programs" (March 27, 2025) ("OPM Guidance"), https://perma.cc/V6WH-435Z. The OPM Guidance declares that Chapter 71 "will no longer apply" to the agencies and agency subdivisions listed in the Executive Order, that "those agencies and subdivisions are no longer required to collectively bargain with Federal unions," and that the affected unions "lose their status as the 'exclusive[ly] recogni[zed]' labor organizations for employees of the agencies and agency subdivisions covered by" the Executive Order. *Id.* at 1, 3 (alterations in original). The OPM Guidance also directs agencies to "cease participating in grievance procedures after terminating their CBAs." *Id.* at 5.

39.     Section 6 of the Executive Order directs agency heads, "upon termination of the applicable collective bargaining agreement," to reassign employees performing representational duties pursuant to official-time arrangements in CBAs, terminate pending grievance proceedings, and terminate proceedings before the Federal Labor Relations Authority involving exceptions or arbitral awards or unfair labor practices. *Id.*

40.     The Executive Order is wholly unmoored from the narrow authority that Congress has granted the President to exclude agencies or agency subdivisions from Chapter 71 where (a) the agency or subdivision has a "*primary* function [of] intelligence, counterintelligence,

investigative, or national security work"; and (b) the provisions of Chapter 71 "*cannot* be applied in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1) (emphases added). Many, if not most, of the agencies and agency subdivisions swept up in the Executive Order's dragnet—including Cabinet departments such as the Department of Veterans Affairs and the Department of the Treasury, and independent agencies such as the Environmental Protection Agency, the Federal Communications Commission, and the General Services Administration—do little to no national security work, much less do they have "as a *primary* function intelligence, counterintelligence, investigative, or national security work." Nor can it be reasonably said that the collective bargaining provisions of Chapter 71 "*cannot* be applied in a manner consistent with national security requirements and considerations" to the panoply of executive departments, agencies, and agency subdivisions swept up in the Executive Order's dragnet—including bargaining units that have had continuous union representation for more than 50 years.

41.    At the same time, however, Section 2 of the Executive Order contains a blanket carveout that preserves collective bargaining for all "police officers, security guards, [and] firefighters." This carveout of safety and law enforcement workers makes no logical sense in light of the exclusion of most other federal employees from Chapter 71 on the purported ground of national security.

42.    For example, both Plaintiff Metal Trades Department and Plaintiff IFPTE have bargaining units at the Portsmouth Naval Shipyard that are excluded by the Executive Order, whereas the International Association of Firefighters ("IAFF") has a bargaining unit at the Portsmouth Naval Shipyard that is *not* excluded by the Executive Order. Plaintiffs are informed and believe and thereon allege that the Executive Order creates the same situation at multiple

other agency subdivisions across the government, including many other Department of Defense

facilities: Employees represented by some unions are stripped of their collective bargaining

rights, while police officers, security guards and firefighters employed by the same subdivisions

retain their collective bargaining rights.

43.    A White House "Fact Sheet" accompanied the Executive Order. *See* The White

House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security

Missions from Federal Collective Bargaining Requirements" (March 27, 2025),

https://perma.cc/5M2G MUSH. In that document, the White House rails against "hostile Federal

unions" that, in the White House's view, have "declared war on President Trump's agenda." *Id.*

The White House Fact Sheet declares that "President Trump supports constructive partnerships

with unions who work with him." *Id.* The Fact Sheet emphasizes: *"**Law Enforcement**

***Unaffected.** Police and firefighters will continue to collectively bargain." Id.* (emphasis in

original).

44.    The country's largest law enforcement union, the National Fraternal Order of

Police ("FOP"), endorsed President Trump's candidacy in 2016, 2020, and 2024,[2] and President

Trump has regularly touted those endorsements.[3] And the largest firefighters' union in the

country, the IAFF, after having exclusively supported Democratic presidential candidates for

more than 50 years, broke with that tradition, declining to endorse either candidate in the 2016

---

[2] FOP Press Release: FOP Endorses Trump! (Sept. 6, 2024), https://perma.cc/D498-5GEE; FOP Press Release: Fraternal Order of Police Endorses Trump for President (Sept. 4, 2020), https://perma.cc/WW8Q-L2TW; FOP Press Release: Fraternal Order of Police Endorses Trump!! (Sept. 16, 2016), https://perma.cc/NWZ3-3G8F.

[3] *See, e.g.*, Donald J. Trump, Remarks at a Campaign Rally in Atlanta, Georgia (Oct. 15, 2024), https://perma.cc/98ZS-G3V2 ("I was also honored to receive the endorsement of the Fraternal Order of Police. Something they don't do easily. … 400,000 law enforcement officers nationwide."); Trump Campaign Press Release: President Trump Is Backing The Blue, And They're Backing Him (Sept. 10, 2020), https://perma.cc/5V84-JF8D; Presidential Debate at Hofstra University (Sept. 26, 2016), https://perma.cc/W697-5RH2 ("I just got today the, as you know, the endorsement of the Fraternal Order of Police ... We have endorsements from, I think, almost every police group, very—I mean, a large percentage of them in the United States.").

and 2024 elections;[4] and in 2020, then-candidate Trump touted his endorsement by one of

IAFF's larger chapters.[5]

45.    The decision by a labor organization whether to endorse or support a political

candidate or political party is not a relevant or permissible consideration for purposes of

excluding agencies or agency subdivisions from collective bargaining pursuant to 5 U.S.C. §

7103(b)(1).

> **E.    Defendant Hegseth, without providing any reasoning, exempted only a tiny subset of Department of Defense Employees from the Executive Order.**

46.    Section 4 of the Executive Order "delegate[s] authority under 5 U.S.C.

§ 7103(b)(1)" to the Secretaries of Defense and Veterans Affairs to "suspend[] the application" of

the Executive Order's exclusion "to any subdivisions of the departments they supervise, thereby

bringing such subdivisions under the coverage of [Chapter 71]" upon their certification that the

provisions of Chapter 71 "can be applied to such subdivision in a manner consistent with

national security requirements and considerations."

47.    Defendant Hegseth did not exercise his delegated authority to exempt any of

Plaintiffs' Department of Defense ("DOD") bargaining units at issue here from the Executive

Order. Rather, in an order dated April 17, 2025, Defendant Hegseth stated that Chapter 71 "can

be applied … in a manner consistent with national security requirements and considerations"

only to "federal wage system employees in the trades" who work in four DOD subdivisions.

---

[4] Katherine Fung & Joe Edwards, "IAFF Under Fire for Not Endorsing Female Presidential Hopefuls" *Newsweek* (Oct. 4, 2024), https://perma.cc/6PPH-6L6F ("The union … announced Thursday that the group's executive board voted … not to support Vice President Kamala Harris nor former President Donald Trump. It is only the second time that the group has refused to back a Democratic presidential candidate since 1960, the only other time being in 2016 when Hillary Clinton was on the ballot.").

[5] Trump Campaign Press Release - Philadelphia Firefighters' and Paramedics' Union Endorses President Donald J. Trump, Applauds His Strong Support for First Responders (Sept. 29, 2020) https://perma.cc/BLS8-PSUN.

DOD, Executive Order 14251 Certification, 90 Fed. Reg. 17,052 (April 23, 2025). Those subdivisions are the following:

> "(a) Letterkenny Munition Center, US Army Aviation and Missile Command, United States Army," 90 Fed. Reg. at 17,052, which, among other things, maintains air-to-air and air-to-ground precision guided missiles stores, serves as an ammunition supply depot for all DOD armed services, and demilitarizes tactical missiles and conventional munitions, see https://www.jmc.army.mil/Installations.aspx?id=Letterkenny;

> "(b) Air Force Test Center, Air Force Materiel Command, Department of Air Force," 90 Fed. Reg. at 17,052, which conducts research and development, testing, and evaluation of manned and unmanned aircraft for the Air Force, see https://www.afmc.af.mil/About Us/Fact-Sheets/Display/Article/1614225/air-force-test-center/;

> "(c) Air Force Sustainment Center, Air Force Materiel Command, Department of Air Force," 90 Fed. Reg. at 17,052, which provides depot-maintenance and supply-chain management services, as well as operations and installation support for Air Force weapons systems ranging from fighter jets to intercontinental ballistic missiles, *see* https://www.afmc.af.mil/About-Us/Fact-Sheets/Display/Article/2828599/air-force-sustainment-center/; and

> "(d) Fleet Readiness Center Southeast," 90 Fed. Reg. at 17,052, which provides aircraft repair and technical services for the U.S. Navy, see https://frcse.navair.navy.mil/.

48.     There is no conceivable justification under Section 7103(b) for Defendant Hegseth to preserve collective bargaining for a subset of employees in these four DOD subdivisions while maintaining the Executive Order's exclusion of Plaintiffs' DOD bargaining units at issue here, some of which have had union representation for more than 50 years.

49.     Defendant Hegseth did not provide any reasoned explanation for his decision to exempt these bargaining units but not Plaintiff's DOD bargaining units.

50.     Nor is there any conceivable justification under Section 7103(b) for Defendant Hegseth to deprive these DOD employees of union representation when more than 25 separate DOD bargaining units of police and firefighters have collective bargaining representation.

**F.    The Executive Order has caused and will continue to cause irreparable harm to Plaintiffs and their members.**

51.    Plaintiffs' bargaining units have operative collective bargaining agreements with federal agencies. These CBAs are valid, bilateral contracts. After issuance of the Executive Order, the subdivisions of the Department of Defense, Department of Homeland Security, and Environmental Protection Agency that employ Plaintiffs' bargaining unit workers unilaterally stopped processing grievances, thereby depriving the workers of any means of enforcing the CBAs. The agency subdivisions also ceased participating in grievance arbitrations with respect to grievances regarding matters occurring before and after the Executive Order. Defendants' implementation of the Executive Order has thereby prevented Plaintiffs from enforcing contractual rights and protecting their members.

52.    The agency subdivisions have also unilaterally ceased transmitting bargaining unit workers' voluntary union dues payments, as required by CBAs and by Chapter 71, thereby cutting off the income of union representatives. As a consequence, Plaintiffs have lost and continue to lose revenue that pays for the representation of the bargaining unit workers. Developing an alternative system for members to pay dues is time-consuming and expensive, such a system will be less reliable than payroll deduction.

53.    Plaintiffs will also lose members because workers have far less incentive to join a union when the union has lost its status as the collective bargaining representative, thereby eliminating the union's core function. The Executive Order also deprives the workers of vital statutory protections, such as the right to engage in union activity "freely and without fear of penalty or reprisal," 5 U.S.C. § 7102, that protect their right to join unions.  The Executive Order also harms Plaintiff AFL-CIO because the AFL-CIO receives per capita payments from its affiliated unions based on the number of workers they represent.

17

54.     Defendants have thus far refrained from announcing that they have terminated the operative CBAs—apparently because Defendants recognize that the Executive Order is legally dubious—but Defendants intend to do so unless they are restrained from implementing the Executive Order. Section 6 of the Executive Order directs agency heads, "upon termination of the applicable collective bargaining agreement," to reassign employees performing representational duties pursuant to official-time arrangements in CBAs, terminate pending grievance proceedings, and terminate proceedings before the Federal Labor Relations Authority involving exceptions or arbitral awards or unfair labor practices. All these actions will cause irreparable harm to Plaintiffs and their members.

## CLAIMS FOR RELIEF

### COUNT ONE
### ULTRA VIRES ACTION IN VIOLATION OF THE SEPARATION OF POWERS
### (All Plaintiffs v. All Defendants)

55.     Plaintiffs incorporate paragraphs 1 to 54 above by reference as if fully set forth herein.

56.     Under the authority granted by Congress in 5 U.S.C. § 7103(b)(1), the President may exclude an "agency or subdivision" from Chapter 71 only if two specific conditions are met: (a) "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work," and (2) "the provisions of [Chapter 71] cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations."

57.     The sweeping, blunderbuss Executive Order—which excludes about 75% of federal employees heretofore represented by federal unions under Chapter 71—is wholly

unmoored from Section 7103(b)'s conditions, contradicts the statute, and exceeds the authority granted to the President.

58.     As an initial matter, the authority granted by Section 7103(b) is to exclude an "agency or subdivision" from Chapter 71, not to pick and choose among unions to favor those unions that support the President or his political party. The Executive Order does not exclude entire agencies or subdivisions because the Executive Order provides that it does not exclude "the immediate, local employing offices of any agency police officers, security guards, or firefighters."  For example, there are more than 25 separate bargaining units of police officers, firefighters or security guards employed by subdivisions within the Department of Defense alone. Yet the Executive Order excludes other civilian employees of the Department of Defense from Chapter 71, while continuing to provide coverage for employees of the same subdivisions who are police officers, firefighters, and security guards.

59.     The staggering breadth of the Executive Order also shows that it could not have been based on a determination that the excluded agencies or subdivisions have "as a primary function intelligence, counterintelligence, investigative, or national security work," which is the threshold requirement for potential exclusion under Section 7103(b). For example, the Executive Order excludes the Environmental Protection Agency, which has a bargaining unit represented by one of plaintiff IFPTE's affiliates, even though "intelligence, counterintelligence, investigative, or national security work" is not a "primary function" of the Environmental Protection Agency. Similarly, the Executive Order excludes the Department of Defense Education Activity ("DoDEA"), which has a bargaining unit represented by plaintiff AFT's Overseas Federation of Teachers, even though that subdivision operates a school system for prekindergarten through 12th grade educational programs and does not have as a "primary function" the performance of

"intelligence, counterintelligence, investigative, or national security work." There are many other examples of agencies or subdivisions excluded by the Executive Order that do not even arguably meet the first of the necessary statutory criteria for exclusion.

60.    The staggering breadth of the Executive Order also shows that it could not have been based on a  determination that "the provisions of [Chapter 71] cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." The Executive Order excludes civilian bargaining units that have been continuously represented by Plaintiffs or their local affiliates for more than 50 years without any interference with "national security requirements and considerations."

61.    Because the Executive Order goes beyond the narrow authority granted by Section 7103(b) and thereby impermissibly effectuates a partial repeal of Chapter 71, the Executive Order is ultra vires and violates the Constitution's separation of executive from legislative powers. For the same reason, Defendants' implementation of the invalid Executive Order is ultra vires and a violation of separation of powers.

## COUNT TWO
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### (All Plaintiffs v. Defendant Hegseth)

62.    Plaintiffs incorporate paragraphs 1 to 61 above by reference as if fully set forth herein.

63.    Under the Administrative Procedure Act ("APA"), a reviewing court "shall … hold unlawful and set aside agency action" that is "arbitrary and capricious" or "contrary to law." 5 U.S.C. § 706(2)(A).

64.    Section 4 of the Executive Order delegated to Defendant Hegseth the authority to suspend the application of the Executive Order to any subdivision of the Department of Defense

if he certified that "the provisions of [Chapter 71] can be applied to such subdivision in a manner consistent with national security requirements and considerations."

65.     On April 23, 2025, Defendant Hegseth issued a certification that was published in the Federal Register and suspended the application of the executive order only for a tiny percentage of his Department's civilian employees:  "federal wage system employees in the trades at the following DOD component subdivisions . . . (a) Letterkenny Munition Center, US Army Aviation and Missile Command, United States Army; (b) Air Force Test Center, Air Force Materiel Command, Department of the Air Force; (c) Air Force Sustainment Center, Air Force Material Command, Department of the Air Force" (d) Fleet Readiness Center Southeast."  This certification was final agency action reviewable under the Administrative Procedures Act.

66.     Defendant Hegseth's failure to exercise his delegated authority under Section 4 of the Executive Order to suspend the Executive Order's exclusion of other Department subdivisions or even explain that failure is arbitrary and capricious and contrary to law.

67.     Defendant Hegseth provided no reasoned explanation as to *why* the application of Chapter 71 to the trades employees at a tiny number of Department subdivisions is "consistent with national security requirements and considerations," whereas the application to Chapter 71 to all other Department subdivisions is purportedly *not* "consistent with national security requirements and considerations."

68.     Defendant Hegseth also provided no reasoned explanation as to why the application of Chapter 71 to Department subdivisions represented by the Plaintiffs is purportedly not "consistent with national security requirements and considerations" when DOD bargaining

units of police, security guards, and firefighters are permitted to maintain their collective bargaining representation.

69.     Defendant Hegseth was required to provide an explanation of his decision because Defendant Hegseth's determination that Chapter 71 cannot be applied to Plaintiffs' bargaining units consistent with national security is a monumental change in the Department's longstanding position on this issue. The Department's subdivisions have had collective bargaining relationships with Plaintiffs' bargaining units for decades—through multiple wars— without any adverse impact on national security. On information and belief, no prior Secretary of Defense has sought to strip the workers in these bargaining units of their collective bargaining rights. Indeed, even when expressly given the authority to exclude Department of Defense components from Chapter 71 during the first Trump Administration if necessary for national security reasons, the then-Secretary of Defense did not exercise that authority.

70.     There also is no relevant difference, for purposes of national security considerations, between the bargaining units Defendant Hegseth exempted and the bargaining units Defendant Hegseth did not exempt. Bargaining units represented by Plaintiffs perform the same type of work for other Department of Defense subdivisions with similar missions or missions less connected with national security work than the exempted subdivisions.

71.     Defendant Hegseth's action was also arbitrary and capricious and contrary to statute because any reasonable analysis would conclude that collective bargaining for Plaintiffs' bargaining units not only is consistent with national security but has greatly enhanced national security by attracting and maintaining a skilled civilian workforce. Indeed, Defendant Hegseth chose not to exempt from the executive order Department subdivisions that are not even arguably involved in performing national security work, such as the DoDEA bargaining unit of

schoolteachers represented by Plaintiff AFT's Overseas Federation of Teachers. As such, there

could not be any evidentiary support whatsoever in an administrative record for Defendant

Hegseth's decision.

72.    Defendant Hegseth's failure to exercise his delegated authority under Section 4 of

the Executive Order to suspend the Executive Order's exclusion of other Department

subdivisions is also contrary to law because the Executive Order is ultra vires the President's

narrow statutory authority and violates the separation of powers, the First Amendment's

protection of speech and petitioning, the Fifth Amendment's guarantee of equal protection of the

laws, and the Fifth Amendment's guarantee of procedural and substantive due process as well as

its protection against unlawful government takings of property.

**COUNT THREE**
**VIOLATION OF THE FIRST AMENDMENT**
**(All Plaintiffs v. All Defendants)**

73.    Plaintiffs incorporate paragraphs 1 to 72 above by reference as if fully set forth

herein.

74.    The First Amendment to the United States Constitution protects against

government actions "abridging the freedom of speech" and "the right of the people … to petition

the Government for a redress of grievances."

75.    The Executive Order was issued in retaliation for the protected speech and

petitioning activities by the American Federation of Labor and Congress of Industrial

Organizations and its affiliated unions that represent federal employees who have exercised their

First Amendment rights to oppose Trump administration policies by making public statements

and filing lawsuits. The Executive Order aims to chill the protected speech and petitioning

activity of all federal unions going forward. The White House's Fact Sheet baldly admitted this

motivation. That document justified the Executive Order on the basis of its assertions that "Federal unions have declared war on President Trump's agenda," that one such union "describes itself as 'fighting back' against Trump."

76.    The White House's Fact Sheet further makes clear that the Trump administration will favor unions voicing support for Trump administration policies and/or refraining from exercising their First Amendment rights to challenge those policies and punish unions that express dissent from Trump administration policies and "fight[] back'" *id.*, against those policies by petitioning the government for redress from the injuries those polices inflict. The Fact Sheet declares: "President Trump supports constructive partnerships with unions who work with him" but "will not tolerate" what the White House characterizes as "mass obstruction." *Id.*

77.    This message that unions supporting Trump policies will receive favor and those opposing Trump policies will receive punishment is reinforced by the Executive Order's blanket exception preserving collective bargaining rights for federal agency police, firefighters, and security guards—whose unions have supported Republicans in general and President Trump in particular. The Fact Sheet highlights the special treatment: "Law Enforcement Unaffected. Police and firefighters will continue to collectively bargain."

78.    The Plaintiffs or their affiliated labor organizations have exercised their First Amendment rights to criticize the actions of the Trump Administration and to petition the government by filing lawsuits to challenge these policies. Such First Amendment activity is part of our constitutional system, not a threat to national security for purposes of 5 U.S.C. § 7103(b)(1) .

79.     The Executive Order's purpose and effect is to harm and punish unions by reason of their First-Amendment-protected speech and petitioning and to chill such protected activity going forward.

80.     The OPM Guidance, and Secretary Hegseth's Executive Order 14251 Certification all carry out and share in the Executive Order's retaliatory purpose and effects.

**COUNT FOUR**
**VIOLATION OF THE FIFTH AMENDMENT'S PROTECTIONS AGAINST THE GOVERNMENT'S ANNULMENT OF VESTED RIGHTS ARISING FROM THE GOVERNMENT'S OWN CONTRACTS**
**(All Plaintiffs v. All Defendants)**

81.     Plaintiffs incorporate paragraphs 1 to 80 above by reference as if fully set forth herein.

82.     The Fifth Amendment of the United States Constitution protects against deprivations of property "without due process of law" and provides that "private property" shall not be "taken for public use, without just compensation."

83.     Collective bargaining agreements entered into pursuant to Chapter 71 are contracts that bind federal agencies and unions representing their employees. *See* 5 U.S.C. §§ 7114(c)(3); 7116. Such "[v]alid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States." *Lynch v. United States*, 292 U.S. 571, 579 (1934). As such, contracts with the federal government are protected by the Takings Clause. *Id.*

84.     The Fifth Amendment's Due Process Clause also protects against the government's retroactive abrogation of its contracts. Where Congress has "the power to authorize" contracts, "the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal police power or some other paramount

25

power." *Lynch*, 292 U.S. at 579. *See also Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984).

85.    Plaintiffs or their local affiliates have CBAs with the federal government that are binding, bilateral contracts. These CBAs do not interfere in any way with national security.

86.    The Executive Order and the OPM Guidance seek to nullify CBAs and extinguish vested rights under them such as pending grievances over actions predating the Executive Order as well as any grievances that might be filed on or after March 27, 2025. These actions deprive Plaintiffs and their members of their vested rights under CBAs and thus their constitutionally protected property interests in CBAs. And they do so with no legitimate public purpose or rational justification. The Executive Order and OPM Guidance therefore constitute unlawful takings and violate the Fifth Amendment's guarantee of substantive due process.

## COUNT FIVE
## VIOLATION OF THE FIFTH AMENDMENT'S GUARANTEE OF EQUAL PROTECTION OF THE LAWS
### (All Plaintiffs v. All Defendants)

87.    Plaintiffs incorporate paragraphs 1 to 86 above by reference as if fully set forth herein.

88.    The due process guarantee of the Fifth Amendment to the United States Constitution includes a guarantee of equal protection. *See United States v. Windsor*, 570 U.S. 744, 769–70 (2013); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

89.    "The Constitution's guarantee of equality 'must at the very least mean that a bare … desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 570 U.S. at 770 (*quoting Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534–35 (1973)).

90.    A "bare … desire to harm a politically unpopular group" is precisely what motivated the Executive Order's exclusion of about 75 percent of union-represented employees

across multiple Cabinet departments and independent agencies, while providing a blanket

exception for agency police and firefighters, whose unions have supported President Trump. This

conclusion is all the more inescapable given the White House's statements admitting that the

purpose of the order is to harm and punish federal unions that have voiced opposition to Trump

administration policies and have petitioned the government for redress from those policies.

**COUNT SIX**
**VIOLATION OF THE FIFTH AMENDMENT'S GUARANTEE**
**OF PROCEDURAL DUE PROCESS**
**(All Plaintiffs v. All Defendants)**

91.     Plaintiffs incorporate paragraphs 1 to 90 above by reference as if fully set forth

herein.

92.     The Fifth Amendment's protection against deprivations of property "without due

process of law" requires, at a minimum, notice and an opportunity to be heard before the

government may deprive a person of property.

93.      "Valid contracts are property, whether the obligor be a private individual, a

municipality, a state, or the United States. Rights against the United States arising out of a

contract with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579.

94.     The Executive Order and the OPM Guidance seek to retroactively nullify CBAs

and extinguish pending grievances over actions predating the Executive Order as well as any

grievances that might be filed on or after March 27, 2025. These actions deprive Plaintiffs and

their members of their constitutionally protected property interests in CBAs lawfully entered into

with government agencies and they do so without having afforded Plaintiffs any notice or

opportunity to be heard in violation of the Fifth Amendment's guarantee of procedural due

process. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

(a)     a declaratory judgment that:

i. the Executive Order, the OPM Guidance, and their nullification of Plaintiffs' statutory and contractual rights, are *ultra vires*, in violation of the separation of powers, in violation of the First Amendment's protection of speech and petitioning activities, in violation of the Fifth Amendment's guarantee of equal protection of the laws, and in violation of the Fifth Amendment's protection against unlawful takings and its guarantee of substantive due process; and

ii. Defendant Hegseth's failure to suspend application of the Executive Order with respect to Plaintiffs' bargaining units or to explain that failure violates the Administrative Procedure Act;

(b)     preliminary and permanent injunctive relief that:

i. prohibits the Defendants and their agents and successors from implementing or otherwise giving effect to the Executive Order and the OPM Guidance with respect to Plaintiffs and their members; or in the absence of such relief

ii. sets aside Defendant Hegseth's April 23, 2025, Executive Order 14251 Certification insofar as it failed to suspend the Executive Order as to Plaintiffs' bargaining units and directs Defendant Hegseth to address the question of whether suspending the Executive Order as to Plaintiffs' bargaining units is warranted under 5 U.S.C. § 7103(b).

(c)     an order granting Plaintiffs their attorney's fees and costs; and

(d)     an order granting such other relief as this Court may deem just and proper.

Dated:  July 29, 2025                    Respectfully submitted,


                                         /s/ Scott A. Kronland
                                         Scott A. Kronland*
                                         Bronwen B. O'Herin*
                                         Altshuler Berzon LLP
                                         177 Post Street, Suite 300
                                         San Francisco, CA 94108
                                         (415) 421-7151
                                         skronland@altber.com
                                         boherin@altber.com
                                         *Counsel for Plaintiffs*
                                         *Pro hac vice applications forthcoming

                                         /s/ Matthew Ginsburg
                                         Matthew Ginsburg (#1001159)
                                         Raven Hall (#1022296)
                                         American Federation of Labor and Congress of
                                         Industrial Organizations (AFL-CIO)
                                         815 Black Lives Matter Plaza NW
                                         Washington, DC 20006
                                         (202) 637-5397
                                         mginsburg@aflcio.org
                                         rhall@aflcio.org
                                         *Counsel for Plaintiff American Federation of Labor
                                         and Congress of Industrial Organizations*

                                         /s/ Michael A. Evans
                                         Michael A. Evans*
                                         Hartnett Reyes-Jones, LLC
                                         4399 Laclede Avenue
                                         St. Louis, Missouri 63108
                                         (314) 531-1054
                                         mevans@hrjlaw.com
                                         *Counsel for Plaintiff Metal Trades Department,
                                         AFL-CIO*
                                         *Pro hac vice application forthcoming

                                         /s/ Gabriel Terrasa
                                         Gabriel A. Terrasa*
                                         Terrasa & Stair, P.A.
                                         7472 Weather Worn Way
                                         Columbia, Maryland 21046
                                         (410) 609-3953
                                         gterrasa@tslawmd.com

*Counsel for Plaintiff International Organization of*
*Masters, Mates, & Pilots, AFL-CIO*
*\*Pro hac vice application forthcoming*

/s/ Richard Hirn
Richard J. Hirn (#291849)
5335 Wisconsin Ave NW, Suite 440
Washington DC 20015
202-274-1812
richard@hirnlaw.com

*Counsel for Plaintiff District No. 1, PCD, Marine*
*Engineers Beneficial Association, AFL-CIO*

/s/ Keith R. Bolek
Keith R. Bolek (#463129)
April H. Pulliam (#198026)
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue, Suite 800
Washington, D.C. 20015
(202) 362-0041
kbolek@odonoghuelaw.com
apulliam@odonoghuelaw.com

*Counsel for Plaintiff Local 100, United Association*
*of Journeymen and Apprentices*
*of the Plumbing and Pipefitting Industry of the*
*United States and Canada, AFL-CIO*