UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS et al., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 25-2445 (PLF) |
| DONALD J. TRUMP et al., | ) ) ) | |
| Defendants. | ) ) | |

OPINION AND ORDER

This matter is before the Court on Defendants' Objection to Notice of Relatedness ("Defs.' Objection") [Dkt. No. 10].[1] Prior to the filing of this case, the Court was assigned and has been overseeing three cases involving various labor organizations and their claims related to Executive Order 14251, which excludes numerous agencies and subdivisions from the collective bargaining protections contained in two similar statutes. The first case (Civil Action No. 25-0935) was randomly assigned to the undersigned. As this Court's Local Civil Rules require, the plaintiffs in the two later-filed cases (Civil Action Nos. 25-1030 and 25-1362)

---

[1] The papers reviewed by the Court in connection with this matter include: Complaint for Declaratory and Injunctive Relief ("Compl.") [Dkt. No. 1]; Notice of Designation of Related Civil Cases Pending in This or Any Other United States Courts ("Notice") [Dkt. No. 2]; Defendants' Objection to Notice of Relatedness ("Defs.' Objection") [Dkt. No. 10]; and Plaintiffs' Response to Defendants' Objection to Notice of Relatedness ("Pls.' Response") [Dkt. No. 14].

submitted notices indicating that their cases were related to the first case filed. See LCvR 40.5. The government did not dispute the relatedness of these three cases.

As in the earlier cases, the plaintiffs in this case (collectively, "AFL-CIO Plaintiffs") filed a notice of related cases, identifying the three other cases pending before the undersigned as related. See Notice of Designation of Related Civil Cases Pending in This or Any Other United States Courts ("Notice") [Dkt. No. 2]. The government has objected to this Notice. For the reasons discussed below, defendants' objection is overruled.

## I. BACKGROUND

The AFL-CIO Plaintiffs are several federal labor organizations representing employees at various federal agencies. See Compl. ¶¶ 7-13. The AFL-CIO Plaintiffs filed this action on July 29, 2025. See id. The action principally challenges Section 2 of Executive Order 14251, which excluded numerous federal agencies and subdivisions from the Federal Service Labor-Management Relations Statute set forth in Title VII of the Civil Service Reform Act, Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (1978) (codified at 5 U.S.C. §§ 7101-35) ("FSLMRS"). See "Exclusions from Federal Labor-Management Relations Programs," Exec. Order No. 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025) ("Executive Order"); see also Nat'l Treasury Emps. Union v. Trump ("NTEU"), Civil Action No. 25-0935 (PLF), 2025 WL 1218044, at *1-4 (D.D.C. Apr. 28, 2025) (providing background on the Executive Order and the FSLMRS). As justification for excluding the agencies and subdivisions from the FSLMRS, President Trump invoked 5 U.S.C. § 7103(b)(1), which provides:

> (1) The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that –

2

>(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
>
>(B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

The AFL-CIO Plaintiffs allege six counts: (1) the Executive Order is <u>ultra vires</u> because it exceeds the President's authority under 5 U.S.C. § 7103(b)(1); (2) actions taken by the Department of Defense and defendant Peter Hegseth pursuant to Section 4 of the Executive Order are arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act ("APA"); (3) the Executive Order reflects retaliation against the AFL-CIO Plaintiffs in violation of the First Amendment; (4) the Executive Order violates the AFL-CIO Plaintiffs' substantive due process rights; (5) the Executive Order violates the Equal Protection Clause of the Fifth Amendment; and (6) the Executive Order violates the AFL-CIO Plaintiffs' procedural due process rights. <u>See</u> Compl. ¶¶ 55-94.

Concurrently with its filing of the complaint, the AFL-CIO Plaintiffs filed a notice of related cases. <u>See</u> Notice. The Notice identified four related cases, three of which were filed in this district and are before the undersigned.[2] The first of these cases – the case with the lowest Civil Action Number – is <u>Nat'l Treasury Emps. Union v. Trump</u>, Civil Action No. 25-0935 (PLF) (D.D.C.) ("<u>NTEU</u>"). <u>See</u> Notice at 2. The <u>NTEU</u> case was filed on March 31, 2025, by a federal labor organization and – like this case – challenges Section 2 of the Executive Order. <u>See</u> <u>NTEU</u>, 2025 WL 1218044, at *4. The plaintiff in <u>NTEU</u> brings three

---

[2] The fourth case identified in the AFL-CIO Plaintiffs' Notice is in the Northern District of California. <u>See</u> <u>Am. Fed'n of Gov't Employees v. Trump</u>, Civil Action No. 25-3070 (JD) (N.D. Cal.). The Court does not analyze the relatedness of the Northern District of California case to the three cases now before the undersigned.

counts:  (1) an ultra vires claim alleging that the Executive Order misapplied the exclusionary provision in 5 U.S.C. § 7103(b)(1); (2) an ultra vires claim alleging that the Executive Order was inconsistent with the FSLMRS; and (3) a First Amendment retaliation claim.  See id.  The plaintiff in NTEU subsequently moved for a preliminary injunction, which the Court granted on April 28, 2025.  See NTEU, 2025 WL 1218044.

The second case identified as related is Am. Foreign Serv. Ass'n v. Trump, Civil Action No. 25-1030 (PLF) (D.D.C.) ("AFSA").  See Notice at 2.  The AFSA case was filed on April 7, 2025, by a federal labor organization and challenges Section 3 of the Executive Order.  Section 3 of the Executive Order excluded numerous federal agency subdivisions from coverage under the Foreign Service Labor-Management Relations Statute, 22 U.S.C. §§ 4101-4140, set forth in Chapter 10 of Title 1 of the Foreign Service Act of 1980.  See AFSA, Civil Action No. 25-1030 (PLF), 2025 WL 1387331, at *2 (D.D.C. May 14, 2025) (providing background on the Foreign Service Labor-Management Relations Statute).  While Section 3 of the Executive Order invoked a provision in a separate statute as justification for excluding these agency subdivisions, "the statutory text and structure of the [Foreign Service Labor-Management Relations Statute] . . . and the FSLMRS are similar in many material respects."  See id. at *2 (discussing similarities between the Foreign Service Labor-Management Relations Statute and the FSLMRS).  The plaintiff in AFSA brings the same three counts as the plaintiff in NTEU, although the counts relate to Section 3 – rather than Section 2 – of the Executive Order.  The plaintiff in AFSA subsequently moved for a preliminary injunction, which the Court granted on May 14, 2025.  See AFSA, 2025 WL 1387331.  Importantly, while the plaintiff in AFSA filed a notice of related cases identifying NTEU as a related case, see AFSA, Civil Action No. 25-1030

4

(PLF), Notice of Designation of Related Civil Cases Pending in This or Any Other United States Courts (D.D.C. May 5, 2025) [Dkt. No. 2], the government did not object to this notice.

The third case identified as related is Federal Education Association v. Trump, Civil Action No. 25-1362 (PLF) (D.D.C.) ("FEA"). See Notice at 2. The FEA case was filed on May 5, 2025, by several federal labor organizations and – like this case – principally challenges Section 2 of the Executive Order. See FEA, Civil Action No. 25-1362 (PLF), First Amended Complaint for Declaratory and Injunctive Relief (D.D.C. June 21, 2025) [Dkt. No. 21]. The plaintiffs in FEA bring seven counts, including an ultra vires claim and a First Amendment retaliation claim. In addition to these claims, FEA also involves similar challenges to those in the instant case brought under the APA and the Fifth Amendment.[3] The plaintiffs in FEA subsequently moved for a preliminary injunction, which is currently under advisement. As in AFSA, the FEA plaintiffs filed a notice of related cases identifying NTEU and AFSA as related cases. See FEA, Civil Action No. 25-1362 (PLF), Notice of Designation of Related Civil Cases Pending in This or Any Other United States Courts (D.D.C. May 5, 2025) [Dkt. No. 5]. The government did not object to this notice.

---

[3] The seven counts brought by the FEA plaintiffs are: (1) the Executive Order is ultra vires because it exceeds the President's authority under 5 U.S.C. § 7103(b)(1); (2) the Executive Order reflects retaliation against Union Plaintiffs in violation of its First Amendment rights; (3) the Executive Order violates the Takings Clause of the Fifth Amendment; (4) the Executive Order violates the Equal Protection Clause of the Fifth Amendment; (5) the Executive Order violates the Union Plaintiffs' procedural due process rights; (6) actions taken by the DoD and defendant Hegseth related to the Executive Order are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"); and (7) actions taken by the DoD and defendant Hegseth related to the Executive Order are contrary to law in violation of the APA. See FEA, Civil Action No. 25-1362 (PLF), First Amended Complaint for Declaratory and Injunctive Relief (D.D.C.) [Dkt. No. 21] ¶¶ 100-35.

II.  LEGAL STANDARD

"The general rule governing all new cases filed in this courthouse is that they are to be randomly assigned" in order "to ensure greater public confidence in the integrity of the judicial process." United States v. Volvo Const. Equip. AB, 922 F. Supp. 2d 67, 68 (D.D.C. 2013) (quoting Tripp v. Exec. Office of President, 196 F.R.D. 201, 202 (D.D.C. 2000)).  An exception to that presumption is located in Local Civil Rule 40.5, which provides that a new case shall be assigned "to the judge to whom the oldest related case is assigned" if the plaintiff notes the existence of a related case at the time of filing.  LCvR 40.5(c)(1); see Millard v. Gov't of D.C., Civil Action No. 22-2672 (RCL), 2023 WL 2301927, at *1 (D.D.C. Mar. 1, 2023); Keepseagle v. Glickman, 194 F.R.D. 1 (D.D.C. 2000).  "Civil cases are 'related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent.'" Comm. on Judiciary v. McGahn, 391 F. Supp. 3d 116, 119 (D.D.C. 2019) (quoting LCvR 40.5(a)(3)).  The party requesting the related-case designation bears the "heavy" burden of showing that the cases are related under Local Civil Rule 40.5.  See id.

"The judge to whom a case is assigned resolves any objection to a related-case designation." Dakota Rural Action v. United States Dep't of Agric., Civil Action No. 18-2852 (BAH), 2019 WL 1440134, at *1 (D.D.C. Apr. 1, 2019).  "If the objection is sustained, the judge may transfer the later-filed case to the Calendar and Case Management Committee, which then decides if good causes exist[] for the transfer and thus random reassignment of the case." Id. (citing LCvR 40.5(c)(1)).

6

III. DISCUSSION

In the instant case, the AFL-CIO Plaintiffs argue that their case is related to the NTEU, AFSA, and FEA cases because (1) the cases "involve[] common issues of fact" and (2) the cases "grow[] out of the same event or transaction." See Notice at 1. The Court concludes that the AFL-CIO Plaintiffs' case is related to these other cases.

Most importantly, all of the cases "grow out of the same event or transaction." See LCvR 40.5(a)(3). The cases each involve challenges to the same Executive Order in the labor-management relations and collective bargaining context, and, as a result, the same determination by the President that a large swath of the federal government workforce should not be covered by the FSLMRS or the related Foreign Service Labor-Management Relations Statute. Furthermore, the Executive Order has the identical effect on each of the labor organization plaintiffs in NTEU, AFSA, FEA, and this case – namely, the Executive Order strips the labor organizations of their status as the exclusive bargaining representative of employees at the affected agencies and subdivisions. Critically, the defendants do not provide any substantive opposition to the AFL-CIO Plaintiffs' contention that these cases "grow out of the same event or transaction," and instead focus their arguments on whether the cases "involve common issues of fact."

As to the "common issues of fact," the Court finds that these cases all involve very similar sets of facts. For example, the plaintiff labor organizations in all the cases essentially rely on the same evidence to establish their ultra vires and First Amendment retaliation claims – a White House "Fact Sheet" and a guidance document issued by the Office of Personnel Management that were both issued in connection with the Executive Order. See NTEU, 2025 WL 1218044, at *3-4 (summarizing this evidence). All the cases involve agencies

7

and subdivisions taking similar actions pursuant to the Executive Order in purported violation of the respective collective bargaining agreements at issue in the cases, such as by refusing to participate in grievance proceedings and terminating the automatic deduction of dues payments from employees' paychecks.  See NTEU, 2025 WL 1218044, at *17-20; AFSA, 2025 WL 1387331, at *13-14; Compl. ¶¶ 51-52.  Outside of the similarities between the harms suffered by each of the plaintiff labor organizations and the cause of those harms – the Executive Order – there is also factual overlap between the agency and subdivisions at issue in each case.  For example, the AFL-CIO Plaintiffs represent employees in parts of the Department of Defense Education Activity, which is the same subdivision of the Department of Defense at issue in FEA.  See Compl. ¶ 9; FEA, Civil Action No. 25-1362 (PLF), First Amended Complaint for Declaratory and Injunctive Relief (D.D.C. June 21, 2025) [Dkt. No. 21] ¶ 1.  The AFL-CIO Plaintiffs represent employees at a component of the Environmental Protection Agency, which is at issue in NTEU.  See Compl. ¶ 8; NTEU, 2025 WL 1218044, at *3.

    The claims brought in each of the cases further supports the conclusion that the cases are related.  Cf. Comm. on Judiciary v. McGahn, 391 F. Supp. 3d at 120 (finding cases were not related when the cases "involve[d] different claims" that "turn on the particularized facts").  Most strikingly, the claims brought by the plaintiff labor organizations in FEA and the ones brought by the AFL-CIO Plaintiffs in this case are almost identical.  First, both cases involve ultra vires claims challenging the President's invocation of 5 U.S.C. § 7103(b)(1).  Second, both cases involve First Amendment retaliation claims that are premised on the same White House Fact Sheet.  The First Amendment retaliation claims also involve the same types of protected activity, such as the public advocacy against certain policies of the Administration and the filing of lawsuits and grievances.  Third, the plaintiffs in both cases bring Equal Protection

Clause and Due Process Clause claims that are substantially similar. Finally, both cases involve claims brought under the APA challenging the Secretary of Defense's failure to invoke his delegated authority under Section 4 of the Executive Order, which permits the Secretary to "suspend[] the application" of the Executive Order "to any subdivisions of the" Department of Defense. See Executive Order § 4. The substantial similarity between the claims in this case and FEA will necessarily implicate common issues of fact. See Autumn Journey Hospice, Inc. v. Sebelius, 753 F. Supp. 2d 135, 140 (D.D.C. 2010) ("Each case thus presents identical issues for resolution: whether the regulation impermissibly conflicts with the underlying statute and, if so, what relief should be afforded the plaintiff hospices. Accordingly, there is substantial overlap in both the factual underpinning and the legal matters in dispute in each of these hospice cap cases."); Singh v. McConville, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (concluding that cases were related where the plaintiffs "challenge[d] the same Department of Defense and Army regulations" and where resolution of the cases would require the Court "to make similar factual determinations . . . related to the defendants' process[,] . . . justifications[,] . . . and . . . conduct and/or intent . . .").

The defendants' objection amounts to the observation that there are facts in each case that are distinct. For example, in the context of the First Amendment retaliation claims brought in each case, the defendants argue that resolution of the claims necessarily turns on the specific "protected activity of the plaintiffs in each case, which are necessarily based on entirely different set of facts in each case." Defs.' Objection at 3. The defendants certainly are correct that the plaintiffs' protected activity in each case is necessarily distinct because, after all, the plaintiffs in each case are different. With that said, the types of protected activity that are alleged to serve as the basis for each of the claims are the same: the filing of lawsuits against the

9

Administration, the filing of grievances against the agencies, and the public advocacy against many of the same policies of the Administration.  See Compl. ¶ 78 (alleging that the AFL-CIO Plaintiffs engaged in protected activity by "criticiz[ing] the actions of the Trump Administration and [ ] petition[ing] the government by filing lawsuits to challenge these policies"); FEA, Civil Action No. 25-1362 (PLF), First Amended Complaint for Declaratory and Injunctive Relief (D.D.C. June 21, 2025) [Dkt. No. 21] ¶ 108 (alleging that the plaintiffs in FEA engaged in protected activity by "voic[ing] opposition to Trump administration policies that harm the federal employees they represent and [ ] petition[ing]" the courts and filing grievances for redress). More generally, as the AFL-CIO Plaintiffs point out, Local Civil Rule 40.5 only requires that related cases have "common issues of fact," not that the facts are "identical."  See Pls.' Response at 5.  In other words, "[t]he fact that the Court will conduct an individual analysis with respect to each plaintiff to determine whether each plaintiff is entitled to the relief he seeks does not obviate the need for factual determinations related to the defendants' regulations and policies, and their administration of those regulations and policies, which are common to both cases." Singh v. McConville, 187 F. Supp. 3d at 157.

        Furthermore, the cases relied on by the defendants are not helpful to their claim, as each case involved significantly more distinctions than the cases at issue here.  For example, in Comm. on the Judiciary v. McGahn, Judge Howell determined that two cases were not in fact related because the cases did "not grow out of the same event or transaction."  See Comm. on Judiciary v. McGahn, 391 F. Supp. 3d at 122.  More specifically, Judge Howell reasoned that one of the cases was a "congressional subpoena enforcement action aris[ing] out of the . . . efforts to enforce a duly authorized, issued, and served Congressional subpoena," while the purportedly related case involved "other efforts to obtain grand jury materials."  Id. (citation

10

and internal quotation marks omitted).  In Trump v. Comm. on Ways & Means, U.S. House of Representatives, Judge McFadden concluded that two cases were not related because they "turn[ed] on different statutes and focus on different officials' actions done at different times." Trump v. Comm. on Ways & Means, U.S. House of Representatives, 391 F. Supp. 3d 93, 97 (D.D.C. 2019).  The remaining cases on which defendants rely are equally unavailing.  See G.Y.J.P. by & through M.R.P.S. v. Wolf, Civil Action No. 20-1511 (TNM), 2020 WL 4192490, at *2 (D.D.C. July 21, 2020) (concluding that cases were not related where resolution of the cases required "evaluat[ion] [of] distinct facts" and the plaintiff had not identified any "common facts" between the two cases); Tripp v. Exec. Off. of President, 196 F.R.D. 201, 202 (D.D.C. 2000) (concluding that "a class action alleging a broad pattern of White House and FBI abuse of privacy rights" was not related to a case "involv[ing] a single plaintiff whose primary allegation is that her privacy rights were violated by one incident involving disclosures to a reporter for the New Yorker in 1998").

In sum, NTEU, ASFA, FEA, and this case all involve (1) challenges to the same Executive Order; (2) the same types of defendants – namely, President Trump and the relevant heads of the agencies where the labor organization plaintiffs' members are employed; (3) the same types of claims; and (4) the same sets of facts and legal theories supporting those claims. The Court therefore concludes that this case is related to NTEU, AFSA, and FEA because it "grow[s] out of the same event or transaction" and "involve[s] common issues of fact."  See LCvR 40.5(a)(1); League of United Latin Am. Citizens v. Exec. Off. of the President, Civil Action No. 25-0946 (CKK), 2025 WL 1187730, at *13 (D.D.C. Apr. 24, 2025) ("These three cases are 'related' because they 'grow out of the same event or transaction' – the issuance of Executive Order [ ] – and 'involve common issues of fact' related to the effect of that Executive

11

Order."). As a final matter, it is also worth noting that many of the arguments made by the defendants in their objection would also be reasons to conclude that NTEU, AFSA, and FEA are not related cases. The problem is that the government did not object to the notices of related cases filed by the plaintiffs in AFSA and FEA. While the government's failure to object to the notices filed in AFSA and FEA is not enough, standing alone, to overrule its objection in this case, the importance of treating similar cases alike provides additional support for the Court's conclusion. See Autumn Journey Hospice, Inc. v. Sebelius, 753 F. Supp. 2d at 140. In light of the foregoing, it is hereby

ORDERED that Defendants' Objection to Notice of Relatedness [Dkt. No. 10] is OVERRULED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 8/11/25