IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-02445-PLF |

**DECLARATION OF MATTHEW S. BIGGS**

I, Matthew S. Biggs, declare as follows:

1.      I am the President of the International Federation of Professional and Technical Engineers ("IFPTE"). I make this declaration based on my personal knowledge and the records of the IFPTE.

2.      IFPTE is an international labor organization headquartered in Washington, D.C., that represents approximately 30,000 federal employees pursuant to the Federal Service Labor-Management Relations Statute ("FSLMRA") in addition to its other public and private sector represented bargaining units.

3.      The majority of federal employees represented by IFPTE work at the Department of Defense (DOD) in the Naval Sea Systems Command (NAVSEA) and the U.S. Army Corps of Engineers (USACE).  IFPTE also represents employees of the U.S. Environmental Protection

Agency in EPA Region 9. Specifically, IFPTE Local 20 is the certified exclusive bargaining representative of professional employees of the Environmental Protection Agency's Region 9, which covers Nevada, California, Arizona, Hawaii, the Pacific Islands, and 148 tribal nations. IFPTE Locals 8A, 49, 86, 96, 97, 98, 131, 259, 561, 777, and 852 are the certified exclusive bargaining representatives of units of civilian employees of USACE. IFPTE Locals 1, 3, 4, 12, 16, 22, 32, and 121 are the bargaining representatives of units of civilian employees of the NAVSEA. IFPTE Local 1437 is the certified exclusive bargaining representative for a unit of professionals who work at an Army facility in New Jersey. IFPTE Local 7 is the certified exclusive bargaining representative of a unit of Defense Logistics Agency (DLA) employees.

4.      I am familiar with President Trump's Executive Order No. 14251, Exclusions from Federal Labor-Management Programs (March 27, 2025) ("Executive Order"). The Executive Order would strip collective bargaining rights from the IFPTE-represented employees in the bargaining units described above.

5.      DOD employees in IFPTE-represented units work mainly as engineers and scientists on submarines, in shipyards, and on USACE engineering projects such as locks and dams. IFPTE has represented these bargaining units for decades, through both wartime and in peacetime; during decades of representation, collective bargaining has presented no conflict with national security for any of its units. In fact, collective bargaining has contributed to a more cohesive and collaborative federal workforce in both DOD and non-DOD units than it would be without the formalized opportunity for employee input.

6.      Engineers & Scientists of California, IFPTE Local 20 (ESC) represents almost 400 engineers and scientists who work in Region 9 of the Environmental Protection Agency and has represented workers in the bargaining unit for forty-six years. The majority of these workers

are in three job classes: Physical Scientist, Life Scientist, Environmental Engineer. All represented employees perform work to support EPA's Mission to Protect Human Health and the Environment by implementing Congressional environmental laws. For example, ESC members review state clean air plans for compliance with federal regulations and the Clean Air Act (CAA), administer grants to fund water infrastructure projects under the Safe Drinking Water Act (SDWA) and Clean Water Act (CWA), review environmental assessments and impact statements under the National Environmental Policy Act (NEPA), coordinate testing and cleanup at national Superfund sites under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), administer contracts, providing laboratory support and Geographic Information Systems (GIS) support. In addition, EPA provides technical assistance to states, tribes, and territories in all environmental areas, and provides emergency response to national disasters such as hurricanes and wildfires to provide technical assistance and cleanup of household hazardous materials.

7. None of the EPA workers represented by IFPTE are engaged in or have national security work identified in either position descriptions or critical work elements identified by the agency. These members perform work at the direction of management and with management oversight, without . None of these employees has independent authority to make decisions related to agency direction or agency policy; decisions are made by management.

8. The IFPTE local affiliates listed above have collective bargaining agreements with the applicable federal government agency for each of the represented bargaining units. These collective bargaining agreements provide employees with contractual protections against arbitrary discipline and include a right to union representation during the disciplinary process. The collective bargaining agreements also provide for, among many other things, the hours of

work, overtime, compensatory time, annual and sick leave, holidays, shore leave, and other leave.  The collective bargaining agreements also include a grievance and arbitration process to resolve any disputes.

9.      In the March 27, 2025 Executive Order, Exclusions From Federal Labor Management Relations Programs, the Administration indicated several specific functions that represent the basis for its determination that the entirety of EPA "has as a primary function intelligence, counterintelligence, investigative, or national security work." None of these functions are within the agency's mission nor are they included as designated critical work elements of any ESC employees. Further, in the associated March 27, 2025 Fact Sheet, EPA is specifically identified with the mission of Energy Security. Neither the Agency's mission nor ESC employees are focused on Energy Security. Instead, EPA and ESC employees are carrying out the mission of protection of human health and the environment.

10.      The agency employers for these IFPTE bargaining units have stopped deducting voluntary union dues as required by our collective bargaining agreements, thereby causing a sudden drop in the revenue necessary to pay for worker representation. DOD agency employers have also been holding grievances in abeyance. Since the issuance of the Executive Order, IFPTE local unions have not received clear guidance from USACE or NAVSEA about how and when the Executive Order will be implemented.

11.      On or around July 3, 2025 the EPA placed 139 employees, including at least ten IFPTE Local 20 members, on administrative leave for investigatory purposes after they signed a "Stand Up for Science" letter to EPA Administrator Lee Zeldin that included identifying information such as their job title and organizational unit using their official titles and EPA positions.  That letter identified several concerns regarding EPA actions in several areas

including undermining the public trust, contradicting peer-reviewed research, and dismantling the Office of Research and Development, whose work forms the scientific basis for federal rulemaking. IFPTE Local 20 members who signed the letter are still on administrative leave pending an investigation into whether they used EPA time or systems when they signed the letter.

12.     On August 8, 2025 EPA sent a notice to IFPTE Local 20 notifying the union it had terminated its collective bargaining agreement and was reclaiming office space used by the unions.  The notice warned employees to refrain from using agency equipment or systems to perform union work.  It also asserted, "The grievance procedures of the CBAs are no longer in effect. EPA will not engage in any grievance procedures of the CBA's" and "any arbitration decisions will be treated as non binding." The notice concluded, "EPA will not engage in any arbitration proceedings under the CBA."

13.     Hours after sending the notice, EPA unilaterally cancelled two arbitrations that had been scheduled with IFPTE Local 20. The arbitrations, which were about matters that occurred prior to issuance of the Executive Order, were scheduled to take place on September 10, 2025 and November 7, 2025.

14.     IFPTE Local 20 members no longer benefit from provisions included in the CBA. For example, since IFPTE Local 20 is no longer recognized as the employees' representative it is unable to effectively represent employees who are on administrative leave and facing discipline for signing the Stand Up for Science letter.  In addition, EPA has informed employees of its intention to conduct an Agency reorganization and reduction in force ("RIF"). IFPTE Local 20 members will no longer benefit from contractual safeguards related to Agency RIFs and reorganization plans.

15. The cancelled CBA with EPA included an enforcement mechanism for some statutory rights. Without access to the grievance procedure, union members lack a process and forum for effectively enforcing their statutory rights.

16. Lacking such protection, union members and leaders are now afraid to exercise their free speech rights under the First Amendment or make protected whistleblower disclosures of waste, fraud and abuse.

17. If the employers terminate our collective bargaining agreements and refuse to recognize IFPTE local unions as bargaining representatives, IFPTE and the unit employees will suffer serious, irreparable harm. Employees will lose their contractual rights concerning hours of work, overtime, compensatory time, annual and sick leave, holidays, shore leave and other leave. The employees will also lose their right to union representation in the disciplinary process; unit employees with have no means of pursuing contractual grievances; and the employer will have no obligation to meet and negotiate with IFPTE union representatives in the future. IFPTE will be unable to represent the unit employees in collective bargaining or in disciplinary matters or in resolving grievances if IFPTE local unions are no longer recognized as their representative, so IFPTE will be unable to perform its core functions.

18. On August 20, 2025 EPA sent a mass mailer to IFPTE-represented bargaining unit members. The mass mailer included a link to a Frequently Asked Questions document. Then, on August 21, 2025, EPA sent an email to some IFPTE Local 20 members that included a link to an updated Frequently Asked Questions document. A copy of the August 20, 2025 mass mailer is attached as Exhibit 1. A copy of the August 21, 2025 email is attached as Exhibit 2. A copy of the updated Frequently Asked Questions document is attached as Exhibit 3.

19.     Each of the attached communications sent by EPA to employees represented by IFPTE Local 20 included a warning from the EPA Ethics Office that advised "caution when performing union activities on non-duty time" and required "[p]rior approval from an ethics official," in addition to a reference to the "representational conflict of interest statute." The FAQ sent out by EPA cites 18 U.S.C. §205, a statute that carries federal criminal penalties for a violation.

20.     IFPTE Local 20 members informed the Local that they interpret the email and FAQ as a threat that engaging in union activities could be considered a conflict of interest and expose them to criminal liability. EPA has also advised union stewards and officers to submit requests for outside activity approval before attending a Labor Day rally occurring on non-work time. After these communications, IFPTE Local 20 members informed the Local that they feared retaliation for participating in union activity, signing a declaration, or otherwise participating directly in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August _22_, 2025 in Washington, D.C.

Matthew S. Biggs

7

Exhibit 1

**From:**
**To:** Mass Mailer
**Subject:** Termination of Collective Bargaining Agreements (AFGE, NAGE R4, NAGE Narragansett, ESC, and NAIL) at EPA
Effective Aug. 8, 2025
**Date:** Wednesday, August 20, 2025 8:16:15 AM



This message is being sent to EPA employees.

Colleagues,

On Aug. 8, 2025, EPA terminated its collective bargaining agreements with all its unions (AFGE, NAGE R4, NAGE Narragansett, ESC, and NAIL) except for NTEU. This change directly impacts employees previously covered under collective bargaining agreements.

Please note:

- As an EPA employee, you must perform 100% agency business while on duty time. Work on behalf of the union may only be performed when you are not on duty time or are on appropriate and approved leave. **Managers will not approve official time for employees formerly in the bargaining units beyond pay period 17 –** *i.e.,* **Aug. 9, 2025, was the final day official time could be approved for employees previously in bargaining units.**
- The EPA Ethics Office advises caution when performing union activities on non-duty time. Prior approval from an ethics official of this activity is required, and there are serious concerns under the representational conflict of interests statute.
- Agency employees may not use agency equipment or systems to perform union work.
- None of the procedures prescribed by the collective bargaining agreements (including local and midterm agreements) are in effect. *E.g.,* EPA will not engage in any grievance procedures prescribed by the collective bargaining agreements.
- EPA is reclaiming its office spaces. Those spaces will be utilized exclusively for agency purposes.
- All former bargaining unit employees will have their bargaining unit status code changed to 8888 as reflected in box 37 of their SF-50.

For more detailed information about the changes, please review the frequently asked questions (pdf).

If you have additional questions, please contact your supervisor.

Michael Molina
Principal Deputy Assistant Administrator, Office of Mission Support

This is an official email address of the EPA Office of the Administrator. Official emails use a **.gov** address, which belong to an official government organization in the United States.

This email was sent to ███████████ using govDelivery Communications Cloud on behalf of: EPA Office of the Administrator · 1200 Pennsylvania Ave NW, Washington, DC 20460



Exhibit 2

| | |
|---|---|
| **From:** | Coomber, Robert |
| **To:** | Coomber, Robert |
| **Cc:** | ethics |
| **Subject:** | RE: Termination of Collective Bargaining Agreements (AFGE, NAGE R4, NAGE Narragansett, ESC, and NAIL) at EPA Effective Aug. 8, 2025 |
| **Date:** | Thursday, August 21, 2025 10:27:35 AM |
| **Attachments:** | image001.png |
| | image002.png |

Dear Colleagues,

Following up on the email below, an update to the FAQs is available on LER's landing page.



### EPA Collective Bargaining Agreement Termination FAQs

On Friday, August 8, 2025, EPA terminated its collective bargaining agreements with all its unions except for NTEU.

The guidance may continue to be updated periodically as we work through these changes.

Best,

Bob

Bob Coomber
Senior Labor Advisor
EPA Office of Mission Support



**They can because we do!**

*Please note that I sent this at a time that was convenient for me without expectation for a response outside of business hours. If you receive this email outside of your normal working hours, please know that I do not expect a response until you are back at work during your normal hours.*

---

**From:** Nguyen, Tiana <Nguyen.Tiana@epa.gov> **On Behalf Of** Molina, Michael
**Sent:** Wednesday, August 20, 2025 10:34 AM
**To:** EPA First Line Supervisors <EPA_First_Line_Supervisors@epa.gov>; EPA Supervisors <EPA_Supervisors@epa.gov>; AO Managers and Supervisors <AO-Managers-and-Supervisors@epa.gov>
**Subject:** Termination of Collective Bargaining Agreements (AFGE, NAGE R4, NAGE Narragansett, ESC, and NAIL) at EPA Effective Aug. 8, 2025

Dear Colleagues,

On Friday, Aug. 8, 2025, EPA terminated collective bargaining agreements with all its unions except for NTEU. That means:

- Official time cannot be approved for EPA employees in the AFGE, NAGE R4, NAGE Narragansett, ESC, or NAIL bargaining units beyond pay period 17 – *i.e.,* **Aug. 9, 2025, was the final day for which official time could be approved for employees formerly in these bargaining units.**
- The EPA Ethics Office advises caution when performing union activities on non-duty time. Prior approval from an ethics official of this activity is required, and there are serious concerns under the representational conflict of interests statute.
- None of the procedures prescribed by the collective bargaining agreements are in effect. *E.g.,* EPA will not engage in any grievance procedures prescribed by the collective bargaining agreements.
- Local management officials must take appropriate and prompt steps to reacquire its union-occupied office spaces. Those spaces must be utilized exclusively for Agency purposes or released. Please work with your servicing Labor and Employee Relations Specialist and the Senior Labor Advisor.
- All former bargaining unit employees (except NTEU) will have their bargaining unit status code changed to 8888 as reflected in box 37 of their SF-50.

For more detailed information about the changes, review the frequently asked questions.

Former bargaining unit employees may reach out to you with questions. Please reference the FAQs or contact your servicing Labor and Employee Relations specialist.

Be well,

*Michael D. Molina*

Principal Deputy Assistant Administrator
Office of Mission Support
(202) 683-5908

Exhibit 3

**EPA COLLECTIVE BARGAINING AGREEMENT TERMINATION FAQS**
**Issued by the Office of Mission Support**

**August 20, 2025**

On Friday, August 8, 2025, EPA terminated its collective bargaining agreements with all its unions except for NTEU.

The answers below apply to all previously recognized EPA unions and former bargaining unit employees (BUEs). **They do not apply to NTEU or NTEU BUEs.**

| AFFECTED UNIONS | |
|---|---|
| **Question** | Which EPA Unions are affected by the termination? |
| **Answer** | <ul><li>AFGE</li><li>ESC</li><li>NAGE in Region 4</li><li>NAGE in Narragansett</li><li>NAIL</li></ul> |

| MOST SIGNIFICANT EFFECTS | |
|---|---|
| **Collective Bargaining Agreements (CBAs)** | |
| **Question** | What is the status of CBAs, and what rules do former BUEs follow now? |
| **Answers** | <ul><li>CBAs no longer affect the employment relationship between former BUEs and the Agency.</li><li>Laws, regulations, guidance, and agency policies are now the only relevant considerations.</li><li>Examples:<ul><li>For issues like telework, remote work, work schedules, and leave, former BUEs should look to Agency Orders and Manuals instead of the CBAs.</li><li>Local move agreements are no longer in effect. Moves will be handled at supervisors' discretion.</li></ul></li></ul> |

| **Official Time** | |
|---|---|
| **Question** | Are former BUEs able to be approved to use official time for union activity? |
| **Answers** | No; former BUEs are no longer eligible to be approved for official time for union activity. |
| **Question** | What actions should be taken if official time is reported on a timecard? |
| **Answers** | o   Official time will not be approved for dates after August 9, 2025.<br>o   If supervisors receive requests for official time or find reporting codes used in PeoplePlus after that date, they should tell employees that is impermissible and determine whether allowing the employee to request leave may be appropriate.<br>o   Otherwise, supervisors should assign AWOL.<br>o   AWOL is not, in and of itself, a disciplinary action but can be the basis for a disciplinary action. |
| **Question** | Why is official time still available for former BUEs in People Plus if they are not allowed to use it? |
| **Answer** | The Agency is taking steps to limit the availability of official time codes from all employees outside the NTEU bargaining unit. We expect to have this limitation implemented the week of August 18, 2025. |
| **Question** | Is the use of official time allowed for permissible EEO purposes? |
| **Answer** | Duty time used pursuant to EEO regulations can be recorded as regular time, but must still be coordinated appropriately with the supervisor. |
| **Union Space** | |
| **Question** | Will the unions retain their dedicated office space? |

| Answers | o No; unions may not use Agency space for union activities and are no longer entitled to dedicated space.<br>o Local Agency officials will work to promptly ensure that dedicated union space is returned to Agency use or released. |
|---|---|

| **Agency Equipment and Systems** |  |
|---|---|
| **Question** | Can the unions use Agency equipment or systems? |
| **Answer** | No; Agency equipment and systems may not be used for union purposes. |

| **UNION DUES** |  |
|---|---|
| **Question** | What happens to union dues payments? |
| **Answers** | o EPA stopped collecting employees' dues earlier in the year.<br>o If an employee signed up for E-dues or another way to pay a union directly they need to engage with the union if they want their allotment changed. |

| **NEGOTIATIONS** |  |
|---|---|
| **Question** | What should happen with current negotiations and what will happen to future negotiations? |
| **Answers** | o Any active negotiations should be discontinued immediately.<br>o Please work with national or local LER staff, as appropriate, to end current negotiations and avoid future engagements with union representatives that could be considered negotiations with unrecognized unions. |

| MEETINGS AND NOTICES | |
|---|---|
| **Weingarten Meetings** | |
| **Question** | Are former BUEs still entitled to Weingarten rights? |
| **Answer** | No; former BUEs are no longer entitled to Weingarten rights; *i.e.*, former BUEs who are in an investigatory interview and reasonably believe they may be subject to discipline have no entitlement to a union representative. |
| **Notices** | |
| **Question** | Is the Agency required to notify the unions if there are changes in working conditions? |
| **Answer** | No; the Agency is no longer obligated to notify the unions about changes to working conditions. |
| **Formal Meetings** | |
| **Question** | Do former BUEs who are union representatives have a right to attend formal meetings? |
| **Answer** | No; union representatives are no longer entitled to join formal meetings. |


| BARGAINING UNIT STATUS (BUS) CODES | |
|---|---|
| **Question** | How should former bargaining unit employees be coded? |
| **Answer** | 8888 (ineligible to join a union) |

| Question | Do EPA headquarters professional employees located in places like Ann Arbor and RTP, who were removed from AFGE's bargaining unit, have a right to join NTEU? |
|---|---|
| Answer | No; employees located in Ann Arbor and RTP are specifically excluded from NTEU's headquarters bargaining unit certification. |

| **TELEWORK AND REMOTE WORK** | |
|---|---|
| Question | Where should former BUEs look to find the telework and remote work rules applicable to them now that the CBAs have been cancelled? |
| Answer | Former BUEs should look to Agency policies. |
| Question | Can former BUEs continue to telework and remote work pursuant to approved BUE forms? |
| Answer | Yes, unless otherwise directed by their supervisor, existing approved telework parameters will remain in effect until former BUEs' BUS codes are updated and non-BUE (NBUE) forms are available to former BUEs. |
| Question | Will former BUEs need to submit NBUE forms? |
| Answer | Yes, but former BUEs' bargaining unit status (BUS) codes may have to be updated first. This could take several weeks or more. Once these changes are implemented, employees will need to submit new applications via the telework app. The Agency will communicate the update with former BUEs. |

| **GRIEVANCES AND ARBITRATIONS** | |
|---|---|
| Question | How will the Agency treat active grievances? |

| | |
|---|---|
| **Answer** | All grievances previously filed under a negotiated grievance procedure will be considered dismissed, and no new grievances under the CBA will be accepted. |
| **Question** | Will the Agency engage further in ongoing arbitrations? |
| **Answer** | o   No; however, any work that has been performed to date by an arbitrator will be compensated. No additional time will be paid by the Agency.<br>o   Any arbitration decisions issued will be treated as non-binding. |
| **Question** | Where should employees go with workplace complaints? |
| **Answer** | o   A grievance that would be or was initially filed under a negotiated grievance procedure can be filed as an internal administrative grievance if the matter covered by EPA's administrative grievance procedure and the grievance is timely.<br>o   Per that procedure, "An employee shall present a grievance concerning a specific act or occurrence within 15 CALENDAR DAYS of the date of the act or occurrence or the date he/she became aware of it. The official receiving the grievance may extend this time limit for good cause shown by the employee."<br>o   The Agency may transfer a grievance initially filed under a negotiated grievance procedure to its internal administrative grievance procedure provided the matter is not excluded by the Agency's administrative grievance procedure and the grievant timely requests to transition to the administrative grievance procedure. |

| | |
|---|---|
| **UNION COMMITTEE PARTICIPATION** | |
| **Question** | Do union representatives have a right to continue to sit on safety committees? |
| **Answer** | No; 5 C.F.R. § 1960.37(b)(2)(ii) explains that "Where employees are not represented under collective bargaining arrangements, members shall be determined through procedures devised by the agency . . ." |

| UNION RECOGNITION AS AN NON-LABOR ORGANIZATION (NLOS OR NLEGS) | |
|---|---|
| **Question** | Can EPA's unions be recognized as NLOs or NLEGs? |
| **Answer** | No; by definition Unions are labor organizations and cannot be recognized as non-labor organizations or non-labor employee groups. 5 U.S.C. § 7103(a)(4); 5 C.F.R. Part 251.103(c). |

| FEDERAL ETHICS IMPLICATIONS | |
|---|---|
| **Question** | May I still perform union activities on non-duty time? |
| **Short Answer** | The EPA Ethics Office advises caution when performing union activities on non-duty time. Prior approval from an ethics official will be required. |

**Need for prior approval of the outside activity**

Because union contracts have been repudiated, former BUEs cannot use official time to carry out union activities. To pursue these activities in personal capacity, you must seek prior approval from an EPA ethics official. The reason is that EPA supplemental ethics regulations require prior approval before engaging in any outside activity, compensated or not, that deals "in significant part with the programs, policies or operations of the Agency" or that involves any matter to which the employee has been assigned in the past year. *See* 5 C.F.R. § 6401.103(a)(4).

To request prior approval of outside activity, send an email that provides the information stipulated at 5 C.F.R. § 6401.103(b) to your own deputy ethics official or to EPA Ethics (ethics@epa.gov).

**Concerns under the representational conflict of interest statute**

All EPA employees are subject to the representational conflict of interest statute at 18 U.S.C. § 205 that prevents us from serving as representative, agent, or attorney for anyone else back to the United States, even if that service is uncompensated.

When union officials used official time to represent bargaining unit members back to the United States, this representational statute was not implicated because you were engaged in the "proper discharge of [your] official duties." *See* 18 U.S.C. § 205(a).

Given the repudiation of the union contracts, however, union officials can no longer use official time. EPA Ethics considered whether another exception can be applied to any union-related representational activity.

If approved for outside activity, then an employee (including a former union official or steward) may represent another employee who is the subject of disciplinary, loyalty, or other personnel administration proceedings in connection with those proceedings. *See* 18 U.S.C. § 205(d)(1)(A). This activity may occur – and approval may be granted – only if the activity is "not inconsistent" with your official duties.

EPA Ethics notes, however, that this exception does not apply to all types of union-related activity. For example, the law still precludes union officials from representing back to the United States in any claim against the federal government itself, any judicial or administrative proceeding involving the union itself, or any agreement or request for the disbursement of federal funds to their union. *See* 18 U.S.C. § 205(d)(2).

Additionally, EPA Ethics notes that Executive Order 14251 (03/27/2025) invoked Section 7103(b)(1) of the Federal Service Labor-Management Relations (FSLMR) statute, 5 U.S.C. Chapter 71 to exclude EPA specifically from coverage. Consequently, EPA Ethics is unwilling to determine that the representational conflict of interest exceptions at 18 U.S.C. § 205(i)(1) (for the FSLMR) or 18 U.S.C. § 205(i)(5) (for labor-management relations between an agency and a labor organization) could apply to all types of union-related activity.

Please note, however, that (as mentioned above) the Equal Employment Opportunity (EEO) regulations at 29 U.S.C. § 1614.605(a) and the EPA Adverse Action Order at § 10.c.1 allow for use of official time to represent other employees independently, when appropriate. If official time is authorized, then you do not need to seek prior approval of this activity and any representational activity taken under these provisions will not trigger a concern under 18 U.S.C. § 205(a).

Questions about this FAQ should be sent to EPA Ethics at ethics@epa.gov.

8