IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-02445-PLF |

**DECLARATION OF DANIEL J. McNEIL**

I, Daniel J. McNeil, declare that the following is true and correct:

  1.  I am a member of the District of Columbia Bar. I serve as General Counsel of the American Federation of Teachers, AFL-CIO ("AFT"). I have held this position since 2023.

  2.  I submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

  3.  AFT is a national labor union representing approximately 1.8 million members, including: educators, healthcare professionals, and public service workers. The AFT has over 3,000 local and state affiliates, one of which is the Overseas Federation of Teachers ("OFT").

  4.  OFT is a labor union that has been certified by the Federal Labor Relations Authority ("FLRA") as the exclusive representative of a bargaining unit of schoolteachers employed by the Department of Defense Education Activity ("DoDEA") in its Europe South District.

1

5. DoDEA is an agency within the Department of Defense ("DoD"), which operates a global school system, the mission of which is to educate children from military-connected families. The DoDEA schools are organized into multiple school districts. DoDEA's Europe South District presently consists of schools located in four countries: Italy, Spain, Turkey, and Bahrain.

6. According to records maintained by AFT, OFT received a charter as a state federation of the AFT in 1968. OFT has engaged in collective bargaining with DoDEA since at least 1973, the year of the oldest certification we are aware of. That certification of OFT as the exclusive representative for the teachers in what is now known as DoDEA's Europe South District was issued by the Department of Labor's Assistant Secretary for Labor-Management Relations, who was responsible for issuing certifications prior to the creation of the FLRA.

7. Since at least 1973, OFT has negotiated a series of collective bargaining agreements with DoDEA, the most recent of which was executed in February 2022 ("CBA"). Pursuant to its terms, the CBA became effective in August 2023 and shall continue in force until 31 December 2028. The CBA was the successor to a 29-year-old collective bargaining agreement executed in 1994 ("1994 CBA"). During that 29-year period, the parties entered into dozens of memoranda of agreement and settled innumerable grievances that were brought pursuant to the 1994 CBA's negotiated grievance and arbitration process.

8. There has been no substantive change in the 52-years since the 1973 certification to the type of employees represented by OFT and employed in DoDEA's Europe South District. They are schoolteachers who educate students from military-connected families. They are trained as teachers and are certified by DoDEA to teach in DoDEA schools. Their daily work as teachers in the DoDEA schools (e.g., preparation and delivery of lessons, guiding extracurricular

activities, coaching school sports, etc.) is functionally no different than the work performed by schoolteachers in typical American school districts.

9. The subjects bargained by the parties to the CBA, 1994 CBA, and their predecessors have remained generally consistent from contract-to-contract and are typical of agreements negotiated between school districts and teachers' unions, as well as contracts negotiated pursuant to the law governing federal sector labor relations, ch. 71. of the Civil Service Reform Act, popularly known as the Federal Service Labor-Management Relations Statute ("Statute"). Examples of articles in the CBA include, *inter alia*: Union Representation/Official Time, Union Sponsored Training, Student Matters, Professional Learning, Teaching Conditions, Personal Injury in the Performance of Duty, Health & Safety, Grievance Procedure, Arbitration, and Voluntary Allotment of Union Dues.

10. On March 27, 2025, Executive Order 14251 "Exclusions from Federal Labor-Management Relations Programs" ("EO") was issued along with a White House Fact Sheet and OPM guidance memorandum. The EO invoked the President's authority pursuant to 5 U.S.C. § 7103(b)(1) to exclude DoD from the coverage of the Statute.  AFT was not consulted before issuance of the EO.

11. Section 4 of the EO delegated authority to the Secretaries of Defense and Veterans Affairs to "issue orders suspending the application of" relevant sections of the EO. The effect of such action would be to exempt agencies from the EO's application, thereby permitting their employees to continue to enjoy collective bargaining rights. No process was provided for in the EO the White House Fact Sheet, OPM guidance memorandum or from any other source or authority of which we are aware, for stakeholders to provide information to the secretaries to consider in determining whether agencies should be granted an exception.

12. On April 3, 2025, OFT leadership received an e-mail from Alexa Rukstele, Chief of DoDEA's Labor Management & Employee Relations Division which states, in relevant part, "Given the directives outlined in [EO 14251], the associated White House Fact Sheet, and OPM guidance, DoDEA has determined that it will pause labor relations-related activities pending further instruction from the Department."

13. On April 8, 2025, AFT President Randi Weingarten sent a letter to Secretary of Defense Hegseth requesting an exception from the EO for DoDEA. DoDEA Director Beth Schiavino-Narvaez was copied on that letter.

14. On April 23, 2025, an "Executive Order 14251 Certification" was issued in the Federal Register granting an exception to the EO for a few agencies within DoD. DoDEA was not listed among those agencies.

15. It was not until June 9, 2025 that AFT received a response to President Weingarten's letter of April 8th. That response was in the form of a letter sent via U.S. Mail by DoDEA Director Schiavino-Narvaez informing President Weingarten that, "DoDEA was not identified in the Department's certification to EO 14251, thus remains excluded from coverage of the requirements of Chapter 71 of Title 5, United States Code, pursuant to the Executive Order."

16. On or about the weeks immediately following March 27, 2025, DoDEA began to violate the terms of the CBA and the Statute. Automatic payroll deduction of dues that is required pursuant to 5 U.S.C. § 7115 and Article 34 of the CBA was terminated which resulted in a nearly complete cessation of OFT's income stream. This necessitated the creation and rapid implementation of an organizing plan with the assistance of AFT to enable OFT members to pay their dues via credit card or automatic deduction from bank accounts. AFT and OFT have expended significant time and resources to implement this plan. OFT has nevertheless

experienced a drop in its membership, as of the date of this Declaration, due to the cessation of automatic payroll deduction of dues by DoDEA.

17. Shortly after the promulgation of the EO, DoDEA ceased providing Official Time required by 5 U.S.C. § 7131 and Article 9 of the CBA. That article provides that two OFT officials will be released from agency work to perform representational duties on Official Time. OFT President Linda Hogan and OFT Secretary Colleen Badidis ceased receiving Official Time and were directed to return to agency work in the classroom. All other Official Time was terminated, including the bargained-for school-level Official Time that OFT representatives received in order to represent members at their worksites.

18. The EO and DoDEA's implementation thereof has resulted in the loss of the negotiated grievance process, which constitutes an ongoing irreparable loss of rights for the OFT and its members. The scope of the grievance system under the Statute is unusually broad and quite different from that which may be familiar to those who have experience with labor relations in the private sector pursuant to the National Labor Relations Act or in the public sector under state collective bargaining laws. Section 7103(a)(9) of the Statute broadly defines "grievance" as any complaint by any employee or a labor organization "concerning any matter relating to the employment of the employee" or by an employee, labor organization, or agency concerning a breach of a collective bargaining agreement or "*any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment*" [Emphasis Added]. 5 U.S.C. § 7103(a)(9). This means that, unlike in the private sector, where parties have to negotiate to include topics within the scope of the grievance process, in the federal sector parties must negotiate to exclude them.

19. The elimination of the Statutory right to binding arbitration of grievances represents an ongoing irreparable loss of rights to the OFT and its members. Not only is the Statute's provision for a negotiated grievance process broad in terms of the scope of topics covered, the Statute requires –again, unlike in the private sector– that the grievance process include binding arbitration for those matters that are not satisfactorily settled. 5 U.S.C. § 7121(b)(1)(C)(iii). This means that any violation of law, rule, or regulation affecting conditions of employment, except concerning the few subjects excluded from the grievance process by the Statute, that arose prior to March 27, 2025 or could have arisen since that point, or may arise in the future, cannot be redressed unless some other statute, rule, or regulation provides for redress.

20. AFT legal staff have extensively researched the avenues for redress of violations of employment-related laws, rules, and regulations in the federal sector. Those avenues are far narrower than that which is provided by the grievance and arbitration process mandated by the Statute. The Administrative Grievance System that is mandated by 5 C.F.R. § 771 and effectuated via DoDEA Administrative Instruction 1426.02 is limited in its scope and does not terminate in binding arbitration. It is a prohibited personnel practice ("PPP") under the Civil Service Reform Act for an agency employee to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles." 5 U.S.C. § 2302(b)(12). PPPs may be redressed by appeal to the Merit Systems Protection Board ("MSPB"). While the scope of the PPP quoted above may appear similar to that provided for by the Statute's requirements for a negotiated grievance process, it is far narrower. The MSPB has held that "To establish that an agency's action constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(12), the following three factors must be met: (1) the action constitutes a "personnel action" as defined

in 5 U.S.C. § 2302(a); (2) the action violates a law, rule, or regulation; and (3) the violated law, rule, or regulation is one that implements or directly concerns the merit system principles." *Special Couns. ex rel. Doe v. Dep't of Agric.*, No. CB-1208-25-0020-U-1, 2025 WL 715081, at *2 (MSPB Mar. 5, 2025) (citing *Special Couns. v. Harvey*, 28 M.S.P.R. 595, 599-600 (1984), *rev'd on other grounds sub nom.*, *Harvey v. Merit Sys. Prot. Bd.*, 802 F.2d 537 (D.C. Cir. 1986)). Rules (1) and (3) cited above are requirements that are not present in the Statute, and they constitute significant impediments to bringing an action before MSPB to address violations of employment-related laws, rules, or regulations in the federal sector.

21. If DoDEA were to commit a PPP by, for example, failing to follow its Administrative Grievance System process, the OFT is precluded from filing a challenge directly with the MSPB. The MSPB has clearly held that it does not have jurisdiction over a PPP absent an otherwise appealable action. *Solamon v. Dep't of Com.*, 119 M.S.P.R. 1,7 (2012); *Davis v. Dep't of Def.*, 105 M.S.P.R. 604, 611 (2007). Otherwise appealable actions include "adverse actions", which are "removals [including involuntary resignation or retirement] . . . reductions in grade or pay, suspensions for more than 14 days, or furloughs for 30 days or less for cause that will promote the efficiency of the service." 5 C.F.R. § 1201.3(a)(1). Other appealable actions outside of adverse actions include (1) performance-based removals or reductions in grade, (2) denials of within-grade salary increases, (3) reductions in force (RIFs), and (4) denials of restoration or reemployment rights. *Id.* § 1201.3(a).

22. Perhaps the most notable subject which cannot be redressed via the filing of a PPP with the MSPB is disciplinary action. Disciplinary actions are defined as suspensions for fourteen days or less. 5 U.S.C. § 7502. There is no right to administrative review through the MSPB or judicial review through an Article III court for employees subject to disciplinary

7

action. *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004). The D.C. Circuit has recognized the unfortunate reality that for disciplinary actions and other lesser personnel actions "the CSRA provides no relief and precludes other avenues of relief," and "[i]t is no answer to invoke the principle that agencies must follow their own regulations." *Id.* at 935. The loss of a means of redress for disciplinary action that will result in a decision that is binding upon DoDEA is a meaningful, ongoing, irreparable harm for the OFT and its members.

23. Although DoDEA has essentially been ignoring the CBA since the issuance of the EO, AFT's understanding from the guidance published by the Office of Personnel Management ("OPM") had been that agencies would not be terminating CBAs and that grievances would be held "in abeyance" until the outcome of litigation about the EO.  OPM recently notified the Ninth Circuit that OPM had revised its guidance on August 13, 2025 and that agencies are now free to formally repudiate their collective bargaining agreements. *See American Federation of Government Employees, AFL-CIO (AFGE) v. Trump*, No. 25-4014 (9th Cir.), Dkt. 34.1

24. Absent injunctive relief, the damage caused by the EO to AFT and its members will be irreparable.  Many of the contractual and Statutory rights that the members will lose are not monetary rights that can be redressed later (e.g., the right to union representation in disciplinary matters; procedural protections that apply to reductions in force; contractual provisions about scheduling and leaves).  OFT will be unable to perform its central function as the representative of the unit workers.

25. The EO has also sent a message to AFT members that the President and the Executive Branch will retaliate against them for the exercise of their First Amendment rights.

26. AFT and its president, Randi Weingarten, have been at the forefront of efforts to hold the Trump Administration to account for its attacks on public education, healthcare, and

public services as well as its rollback of civil rights and protections for its members and the communities they serve. The AFT's opposition to the Administration's agenda is a matter of public record and is recorded in the press releases issued between Inauguration Day and late March, immediately prior to the release of the EO. A selection of the press releases from that time period are listed below and all of them may be found at https://www.aft.org/press/releases (last accessed, August 14, 2025): AFT's Weingarten on Trump's Assault on Educators and Vulnerable Kids (01/29/25); AFT's Weingarten on Trump Order Attacking Public Schools (01/29/25); AFT's Weingarten on Trump's Rescission and Unrescission of Memo Freezing Vital Federal Aid (01/29/25); AFT's Randi Weingarten Responds to Elon Musk's Invasion of Our Privacy (02/04/25); Educators, Students and Activists Rally to Kick Elon Musk Out of the Education Department (02/12/25); AFT and MomsRising Launch Times Square Ad Exposing Trump's Broken Promises on Skyrocketing Egg Prices (02/14/25); AFT Holds 2,000 Events, Activities During March 4 Day of Action to 'Protect Our Kids' (03/04/25); AFT's Weingarten on Trump's Order to Dismantle the Education Department (03/05/25); Advocates Blast Trump Plans to Sign Executive Order to Weaponize Public Service Loan Forgiveness and Stifle Free Speech Across America (03/07/25); AFT's Weingarten Reacts to Gutting of Department of Education (03/11/25); AFT's Weingarten on Trump's Attacks on Higher Education (03/17/25);  AFT's Weingarten Responds to Trump's Attempt to Eliminate Federal Role in Education (03/19/25); AFT Members Respond to Trump's Executive Order to Eliminate the Federal Role in Education (03/20/25).

27.     Since January 20, 2025, AFT has sued the Administration and high-level federal officials, including President Trump, in order to seek justice for the unprecedented rollback of its

members rights as well as the attacks on public education and public services. AFT is a plaintiff in the following litigations filed prior to the issuance of the EO:

a. *AFL-CIO v. Dep't of Labor*, 1:25-cv-00339 (D. D.C., Filed Feb. 5, 2025): On Feb. 5, 2025, the Department of Government Efficiency ("DOGE") sought access to internal information systems at the Department of Labor. Plaintiffs sued, arguing DOGE's attempt to direct the agency and access internal information systems are an unlawful exercise of power beyond its authority; and unlawful under the Administrative Procedure Act as a prohibited personnel practice, violation of the Confidential Information Protection and Statistical Efficiency Act, violation of the Privacy Act, rulemaking without proper procedure, and arbitrary and capricious abuse of discretion.

b. *American Federation of Teachers v. Bessent* (D. Maryland, filed Feb. 10, 2025): The complaint alleges that the Treasury Department, Office of Personnel Management, and Department of Education have provided DOGE "special government employees" with access to information systems that contain records of private citizens' sensitive personal information (including Social Security numbers, financial records, and more). Plaintiffs sued, arguing DOGE access is unlawful under the Administrative Procedure Act as (1) not in accordance with the Privacy Act; (2) an arbitrary and capricious abuse of discretion; and (3) in excess of statutory authority. They seek a declaratory judgment that disclosing records to DOGE is unlawful and temporary, preliminary, or permanent injunctive relief to bar defendants from allowing DOGE to access sensitive information; ensure there is no further unauthorized disclosure; ensure records improperly disseminated are

    retrieved or destroyed; and ensure future disclosures will only occur in accordance with the Privacy Act.

c. *American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*, (1:25-cv-00596) (D. Md., filed February 21, 2025) Plaintiffs filed a lawsuit challenging the USDS access to Social Security Administration data and systems. They allege that allowing DOGE to access private citizens' sensitive data violates several laws, including the Internal Revenue Code, the Privacy Act, the Federal Information Systems Modernization Act, the E-Government Act, and the Administrative Procedure Act. Plaintiffs further allege that Acting SSA Commissioner Leland Dudek's exercise of significant authority without nomination or confirmation violates the Appointments Clause of the U.S. Constitution. Plaintiffs are the court to declare DOGE's access to SSA data and systems unlawful, order DOGE to disgorge or delete any unlawfully obtained data and prohibit any further efforts by either DOGE or SSA to enable DOGE to access SSA data or systems.

d. *American Federation of Teachers v. U.S. Department of Education*, 1:25-cv-00628 (Filed Feb. 25, 2025 D. Md.). On Feb. 14, 2025, the Department of Education Office for Civil Rights published a Dear Colleague Letter announcing its intentions for enforcing the Supreme Court's decision in *Students for Fair Admissions v. Harvard*, which bans race-based affirmative action. Plaintiffs allege that the Letter threatened to withhold federal funding from schools with DEI programs, programs that teach about "systemic and structural racism," or programs that otherwise factor race into educational environments. Plaintiffs

    allege the Letter violates the First Amendment's protections for freedom of speech and association, the Fifth Amendment's Due Process protections, and the Administrative Procedure Act. Plaintiffs seek declaratory judgment that the Letter is unlawful and unconstitutional and a preliminary injunction against any steps taken to implement the Letter.

e. *American Federation of Teachers v. U.S. Department of Education*, 1:25-cv-00802 (D. D.C. filed March 18, 2025), the AFT sued the United States Department of Education ("ED") for effectively breaking the student loan system, denying borrowers' access to affordable loan payments and blocking progress towards Public Service Loan Forgiveness ("PSLF"), in violation of federal law. Federal education officials eliminated access to income-driven repayment ("IDR") plans—student loan repayment options that give millions of people the right to make loan payments they can afford—by removing the application form from ED's website and secretly ordering student loan servicers to halt all processing. AFT seeks a court order to restore borrowers' access to IDR and PSLF.

f. *American Association of University Professors v. United States Department of Justice*, 1:25-cv-02429 (S.D.N.Y. filed March 25, 2025). The AAUP and AFT sued the U.S. Department of Justice, ED and other federal agencies asking the court to temporarily and/or permanently block the Trump Administration's termination of federal funding to Columbia University and imposition of certain demands on the university on the basis that these actions violate the Civil Rights Act of 1964, the Administrative Procedure Act, and the Constitution. Plaintiffs ask

the court to declare unlawful the termination of funding to Columbia University and the demands made in the Mar. 13 letter. Plaintiffs also request a preliminary and permanent injunction requiring the Defendants to reinstate all federal grants and contracts and not withhold such funds in the future, and enjoining Defendants from enforcing the demands in the March 13 letter. Plaintiffs are also requesting compensatory and nominal damages.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed August 15, 2025, in Washington, D.C.

_____
Daniel J. McNeil