IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>      Defendants. | Civil Action No. 1:25-cv-02445-PLF |

**DECLARATION OF ADAM VOKAC**

I, Adam Vokac, hereby declare under the penalty of perjury that:

1.  I am a 2000 graduate (Valedictorian) of the U.S. Merchant Marine Academy at Kings Point and I hold a Chief Engineer's license issued by the U.S. Coast Guard. Since January 2021 I have served as the President of District No. 1, Marine Engineers' Beneficial Association, AFL-CIO, ("MEBA") which is the oldest U.S. maritime union, representing licensed engineering and deck officers aboard U.S. government and merchant vessels.

2.  I am familiar with Executive Order 14251 issued by the President on March 27, 2025 because it has affected the collective bargaining rights of MEBA's members and other licensed engineering officers for whom MEBA has been certified as their collective bargaining representative.

3.  MEBA was certified as the exclusive bargaining representative of all licensed engineering officers employed aboard the approximately 125 civilian-crewed vessels of the Military Sealift Command by the Assistant Secretary of Labor for Labor-

Management Relations in his decision No. 245 of 22 January 1973 under the authority of Executive Order 11491, which governed collective bargaining in the Federal government before the enactment of the Federal Service Labor Management Relations Statute. The current collective bargaining agreement covering this bargaining unit became effective in 1997.

4. MEBA is also the certified collective bargaining representative of all civilian licensed engineering officers employed in the continental United States by the U.S. Army Corps of Engineers ("ACE"), such as those aboard dredging vessels. The current collective bargaining agreement covering this bargaining unit became effective in 1996.

5. The collective bargaining agreements provide employees with contractual protections against arbitrary discipline and with a right to union representation during the disciplinary process. The collective bargaining agreements also provide for, among many other things, the hours of work, overtime, compensatory time, annual and sick leave, holidays, shore leave and other leave that generally ensure that these engineers are compensated consistent with pay practices in the private maritime industry.

6. As a result of the issuance of Executive Order 14251, both the Military Sealift Command and the Army Corps of Engineers terminated our members' dues allotments in pay period 8, which ended on April 5, 2025. As a result, MEBA has lost the bi-weekly dues once paid by 320 of its members that are employed by MSC and that were once paid by 24 members that are employed by the Army Corps of Engineers, and the dues of those members are now in arrears. MEBA depends on dues revenue to represent its bargaining units.

7. Neither MSC nor ACE have responded to grievances which the union has filed since Executive Order 14251 was issued.

8. MEBA has inquired of the Military Sealift Command whether they continue to recognize our collective bargaining agreement and the negotiated grievance procedure contained therein, and whether it continues to recognize the union as the employees' representative. In response, on July 21, 2025, even before this lawsuit was filed, MSC responded: "At present there is ongoing federal litigation regarding the EO and its implementation. The Agency continues to await disposition of the pending litigation and thus MSC cannot provide any further information at this time. Thank you for your inquiry." As of the date of this declaration, neither MSC nor ACE has provided any further guidance to MEBA as to whether or when they intend to withdraw recognition of the union or repudiate our collective bargaining agreements.

9. Since the Executive Order was issued, neither MSC nor ACE has notified the union when making changes in conditions of employment nor provided the union with an opportunity to bargain over those changes as the Federal Service Labor Management Relations Statute and the collective bargaining agreements require. We have not been afforded any meetings with management of either agency to discuss working conditions, such as the union/agency labor forums that were previously being held quarterly. This prevents MEBA from representing the bargaining units.

10. MEBA has represented the licensed engineering officers aboard MSC and ACE vessels since the fall of the Soviet Union, in the aftermath of 9/11 and during the War on Terrorism and Operation Iraqi Freedom, as well as during the war in Afghanistan, the longest war the United States has ever fought, without any interreference with MSC's

or ACE's national security requirements or considerations. In fact, MEBA has been a steady source of manpower for MSC in particular since there is an industry-wide shortage of licensed maritime engineering officers. Withdrawal of recognition of MEBA will jeopardize MSC's mission and our national security because licensed engineering officers, who are in short supply, will be reticent to accept employment without the protection of a union contract, inasmuch as virtually the entire U.S. maritime industry, with whom MSC competes for personnel, is unionized.

11. Withdrawal of recognition of MEBA or repudiation of our collective bargaining agreements would cause severe and irreparable harm to MEBA and the bargaining unit workers. MEBA and the workers will lose the contractual protections that have been negotiated over the course of many years and the ability to enforce those protections.

In accordance with 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my information and belief. Executed on August _13_, 2025.

_____
ADAM VOKAC